[Civ. No. 4389. First Appellate District, Division One.—July 23, 1923.]

LILLIAN MAY STEIL REID et al., Respondents, v. NORTHERN ASSURANCE COMPANY (a Corporation), Appellant.

LILLIAN MAY STEIL REID et al., Appellants, v. SUN INSURANCE OFFICE OF LONDON, Respondent.

LILLIAN MAY STEIL REID et al., Respondents, v. THE LONDON ASSURANCE CORPORATION (a Corporation), Appellant.

[1] FIRE INSURANCE—REMOVAL OF GOODS—CONTINUED COVERAGE—ES-TOPPEL—FORMER APPEAL—LAW OF CASE.—In these actions upon policies of fire insurance covering certain goods originally situated in one building but which had been removed to another, the conclusion of the supreme court on a former appeal (171 Cal. 795), in discussing the instructions given by the trial court on the first trial, as to what would have constituted correct instructions upon the question of estoppel of the insurance companies to rely upon the fact that they had not in writing consented to continue the insurance at the new location, constituted the law of the

case and as such was binding upon the parties during the later trials thereof.

[2] ID.—WRITTEN CONSENT TO CONTINUANCE OF INSURANCE—ESTOPPEL—EVIDENCE.—In these actions upon policies of fire insurance in three separate companies covering certain goods originally situated in one building but which had been removed to another, the evidence showed facts sufficient to create an estoppel of two of the insurance companies defendants to rely upon the fact that they had not in writing consented to continue the insurance at the new location.

[3] ID. — AUTHORITY OF AGENT — EVIDENCE. — The evidence having shown that a certain person had been connected with the local management of one of the insurance companies for several years and bore the title of "Branch Secretary" indorsed upon the policies of the company and printed upon its letter-heads, that the business of plaintiff in carrying insurance in that company had always been transacted with him, that he attended to the details of the settlement made by plaintiff with the company for the losses occasioned by a former fire, and there having been other evidence to the effect that it was the general understanding on the street that he was in charge of the city department of that company, the jury was justified in concluding that he had authority to bind the insurance company by his statements, act, and conduct.

[4] ID.—WAIVER—ESTOPPEL—AUTHORITY OF BROKER.—While an estoppel may be created by the acts and conduct of the duly authorized local agents and representatives of an insurance company, notwithstanding a provision in its policy that any waiver of the provisions or conditions thereof shall be written upon or attached to the policy, such estoppel cannot be created by the acts and conduct of a firm of brokers having no pretense of any connection with the insurance company in the capacity of official agents or representatives and who throughout the entire transaction represented the insured and not the insurance company.

APPEAL on a consolidated record from judgments of the Superior Court of the City and County of San Francisco. Daniel C. Deasy, Judge. Affirmed.

The facts are stated in the opinion of the court.

Morrison, Dunne & Brobeck, Roland C. Foerster and R. L. McWilliams for Appellants and Respondents Reid et al.

Redman & Alexander for Respondent Sun Insurance Office.

Chickering & Gregory and Winfield Dorn for Appellants Northern Assurance Company and The London Assurance Corporation.

RICHARDS, J.—Prior to the month of January, 1906, one Henry Steil had taken out three policies of insurance upon certain goods then situated in the Chronicle Building, in the city of San Francisco, in three insurance companies; one issued by the Sun Insurance Office of London, one by the Northern Assurance Company, and one by The London Assurance Corporation. In January, 1906, Steil removed said goods to the Shreve Building, in said city, where, on April 19, 1906, they were destroyed in the great fire. The several companies refused to pay the loss, whereupon Steil commenced three actions for recovery upon these policies. In the amended complaint in each of said actions the plaintiffs, after alleging the entering into the contract of insurance with the defendant therein and describing the goods covered thereby at their original location in the Chronicle Building and after averring the removal of said goods to the Shreve Building on or about January 20, 1906, proceeds to allege that the defendant had knowledge at said time of the transfer and removal of said goods to their new location; and "that said defendant, having knowledge and being informed that said stock of cloths, cassimeres, tailors' trimmings, clothing manufactured and in process of manufacture, silks, furnishing goods and other merchandise had been so removed, duly waived any and all indorsement upon said policy of insurance, setting forth said removal and the consent of said defendant thereto. That said defendant had immediate knowledge of said removal of said goods and failed to take any action, whatsoever, within a reasonable, or other, time after acquiring such knowledge, to forfeit, rescind or determine said contract or policy of insurance or to return to said Henry Steil the unearned portion of the premium paid thereon, and thereby waived its right to forfeit, rescind or determine the same; that immediately after the transfer and removal of said stock of cloths, cassimeres, tailors' trimmings, clothing manufactured and in process of manufacture, silks, furnishing goods and other merchandise, as hereinbefore alleged, and prior to the destruction of the same by fire as hereinafter alleged, said Henry Steil

notified said defendant of such removal and transfer and upon such notification requested that said policy of insurance be transferred to cover said stock of cloths, cassimeres, tailors' trimmings, clothing manufactured and in process of manufacture, silks, furnishing goods and other merchandise while contained in said Shreve Building, and that said insurance continue notwithstanding such removal and transfer, and thereupon said defendant, knowingly and intentionally, represented to said Henry Steil and led and induced him to understand and believe, and said Henry Steil did in fact understand and believe, because of such representations, that his said stock of cloths, cassimeres, tailors' trimmings, clothing manufactured and in process of manufacture, silks, furnishing goods and other merchandise was insured and covered by said policy of insurance after said transfer and removal and while the same was contained in said rooms 301 to 307 of said Shreve Building, and said Henry Steil, because of such representations of defendant and not otherwise, and relying upon the same, did not attempt to procure and did not procure other insurance upon said stock of cloths, cassimeres, tailors' trimmings, clothing manufactured and in process of manufacture, silks, furnishing goods and other merchandise after the removal and transfer of the same, as aforesaid, or otherwise or at all protect or attempt to protect himself against the loss or destruction of the same by fire; that by reason of the premises, said defendant is now estopped and precluded from in any manner claiming or asserting that said policy is forfeited and that said stock of cloths, cassimeres, tailors' trimmings, clothing manufactured and in process of manufacture, silks, furnishing goods and other merchandise was not insured and covered by said policy of insurance after the removal of the same and while located at rooms 301 to 307 of the third floor of said Shreve Building.'' The defendant in each of said actions, while admitting the issuance respectively of the insurance policy sued upon, denies each and all of the matters set forth in the portion of the plaintiffs' amended complaint above quoted. The trial before a jury in each case upon the issues as thus framed resulted in a verdict and judgment in the plaintiffs' favor. The defendants respectively moved for a new trial upon the usual statutory grounds, which motion was granted by the court. The order

granting a new trial in each case stated that the court found the evidence sufficient to justify the verdict, but that the new trial was granted because the court was of the opinion that it was in error in giving two certain instructions set forth in the order. The plaintiff in each case appealed to the supreme court from each of said orders granting a new trial, but which orders the supreme court affirmed in an opinion written by Mr. Justice Shaw and reported in the consolidated cases of *Stell* v. *Sun Ins. Office of London et al.*, 171 Cal. 795 [155 Pac. 72]. In its said opinion affirming the orders of the trial court in said cases the supreme court discusses the questions raised by the pleadings of the parties relative to the alleged waiver and estoppel of the defendants arising out of the facts set forth in the above-quoted portion of the plaintiffs' amended complaint and adverted to in the instructions for error in giving which the new trial had been granted in each case. In so doing the court held that there being no provision in any of these policies that the removal of the goods from the place where they were described as being located would operate to annul the policy, such would not be the effect of their removal, the only effect being that the goods would not be insured in their new location until something was done to continue the insurance upon the goods in their said new location. This, of course, might be accomplished through the consent in writing through its properly authorized officials of the insurer. This condition, however, was not claimed to exist in the instant cases; but the court proceeds to consider the question as to whether the same result might not be accomplished by the existence of facts which would suffice to create an estoppel on the part of the insurer to deny that it had consented to the removal of the goods to another location. In discussing this phase of the question the supreme court used this language:

"In order to continue the insurance upon the goods, or, in other words, to carry it to the goods in the new location, something more was required than a mere notification by the insured to the insurer of the fact that the goods were, or were about to be, removed. That fact alone would only suspend the insurance risk. The insurer must be informed, or be given good cause to believe, that the party insured desired to have the insurance on the goods continued in the

new place, that he wished a modification of the policy to make it cover the goods in the new location, and must then, by positive act, or by failure to act, cause the insured to believe that the insurer consented to such transfer or modification, and that the goods were covered by the policy. Something in the nature of a new agreement, either express, or implied from conduct or words, or created by estoppel, was necessary.''

In the light of the foregoing language the supreme court proceeds to point out the defect in the instructions which had led to the orders granting new trials in these respective cases in the following words:

''The instructions informed the jury that a notification of removal, followed by silence and failure to cancel the policy and return the unearned premium, would operate to estop the insurer from denying that it had consented to the removal and had agreed that the policy should cover the goods, notwithstanding such removal. They should have contained the additional premise that the assured, upon such notification, requested that the policy be transferred to the new location, or that the insurance be continued, notwithstanding the removal, or something to indicate that the notification was given under circumstances which would have given the insurer reasonable cause to believe that the assured desired or expected the matter to be so adjusted. The evidence concerning the notification referred to all indicated that such desire and expectation existed and was made known to the assured, but the instructions omitted all reference thereto. In this respect they were defective, incomplete, and possibly misleading.''

Having expressed the foregoing views as to what the instructions to the jury in each of said cases should have stated as the law of the case, the supreme court affirmed the orders of the trial court granting a new trial in each of said cases. Thereupon a new trial was had in each. Upon the second trial the jury in each case again rendered verdicts in the plaintiffs' favor but on motion for a new trial the court again vacated the judgment in each case from which orders no appeal was taken. A third trial of the three cases resulted in a disagreement of the jury in each case and all of the cases were again retried.

Upon the fourth trial, by stipulation of the parties, the three cases were consolidated for the purpose of trial and tried before the same jury. In the two cases wherein the Northern Assurance Company and The London Assurance Corporation were defendants respectively, the jury rendered verdicts in the plaintiffs' favor. In the case in which the Sun Assurance Office of London was the defendant the trial court granted the defendant's motion for a nonsuit. In the first two cases the defendants have appealed. In the last-named case the plaintiff has appealed. These appeals, while separately taken, have been presented upon a consolidated transcript but upon separate briefs. The original plaintiff having died in the meantime, the executrices of his last will and testament have been substituted in his place and stead in all three appeals.

[1] Dealing first with the appeals which have been prosecuted by the defendants Northern Assurance Company and The London Assurance Corporation, we find the first contention of the appellants to be that no transfer of the insurance of either appellant upon the goods in question was made or indorsed in writing upon the policies of either as required by their terms and hence there was no insurance upon said goods at said location at the time of their destruction by fire. It is, of course, conceded that these policies were not changed by any writing between the parties agreeing or consenting to the transfer of the insurance upon the goods in their new location; but notwithstanding this admitted fact we are of the opinion that the insurers would still be bound if the facts relied upon by the plaintiff as the basis of his recovery in each of these cases as creating an estoppel against each defendant were sufficiently proven. In support of this view it is not necessary to look further than to the language of the supreme court upon the first appeal and which is quoted above; since it is there expressly held that the instructions which were given to the jury upon that first trial had contained the element that in the oral communications between the insured and the insurer after the change of location the insurer had been informed or had been given good cause to believe that the party insured desired to have the insurance on the goods continued in the new place and that he wished a modification of the policy to make it cover the goods in the new location, and if the insurer upon being so informed had

by positive act or failure to act caused the insured to believe that the insurer consented to such transfer or modification and that the goods were covered by the policy, these facts would suffice to create an estoppel against the insurers to deny that they had consented to the change of location and had agreed that the policy should cover the goods notwithstanding such removal.  We are of the opinion that this conclusion of the supreme court as to what would have constituted correct instructions touching this branch of each of these cases constitutes the law of the case and as such was binding upon the parties during the later trials thereof and hence that the first point urged by the said appellants is devoid of merit.  (*Brett* v. *S. H. Frank & Co.*, 162 Cal. 735 [124 Pac. 437].)

[2]  This brings us to the second contention of said appellants, which is that the evidence fails to show facts sufficient to create an estoppel in each case.  This involves a brief recital of the facts of each case as testified to by the plaintiff and his witnesses upon the several trials thereof.  Upon the first trial of these cases the plaintiff was still living and he testified, in substantial effect, that on the twentieth day of January, 1906, the date of the removal of the goods to the new location, he took the three policies of insurance and handed them to Mr. Paine, his bookkeeper, with certain instructions.  He was not permitted to testify as to what these instructions to his bookkeeper were, but both the plaintiff and his daughter testified that the bookkeeper went out taking the policies with him and came back later with them and that no change of location had been indorsed on the policies when they were returned to the plaintiff.  Mr. Paine had died prior to the trial and his testimony on the subject was lost to the plaintiff, but his son, Arthur Steil, who had been the manager of his father's business for several years while its location was in the Chronicle Building, but who was absent in Portland at the time of the change of location, testified that upon his return in the following February he rang up The London Assurance Company on the telephone and talked with Mr. F. W. Tallant, an official of the company, with whom the business of placing the policy of that company upon the goods had originally been transacted; and that he asked him if "our bookkeeper had been down at their office with their policy asking for a transfer and Mr.

Tallant replied, 'Yes, the man was down at the office. We have no objection to the transfer and just send them down.' " "Well, I said, 'Mr. Tallant, you know that fire in the Chronicle Building is still in abeyance. That has not been settled and on the advice of our lawyers we were told not to leave the policies and I want to ask you if we are covered in this new location,' and Tallant replied, 'Yes, you are covered but send down the policies.' " Mr. Arthur Steil further testified that he also rang up the Northern Assurance Company and asked for the city agent of said company and was told that it was Mr. Hunter, and when the latter came to the phone "I asked him if our bookkeeper had been there with our policies, and he said, 'Yes, he was down here,' and I asked him if there was any objection to the transfer, and he said, 'No, absolutely, there was no objection,' to send the policy down; and I replied to him the same as I did to Mr. Tallant, that on account of the fire in the Chronicle Building not being settled and on the advice of our attorney not to leave the policy until that settlement was made; and I asked Mr. Hunter if we were covered in the new location. He said very positively that we were covered. The same statement was made by Mr. Tallant and Mr. Hunter—that we were covered in the new location." This witness further testified that he accepted and trusted these statements and believed that they were covered and took out no other insurance, and that they never received any further request or notice from the insurers with relation to their policies until after the fire. In addition to the foregoing testimony there was offered and admitted on behalf of the plaintiff the evidence of one Naughton, assistant manager of the Northern Assurance Company, to the effect that occasionally requests for approval of transfers of location were received over the telephone, and if the removal was approved the representative of the company would inform the insured that he was covered and ask him to send down his policy for indorsement and that in such case the insured would be covered for a reasonable time and until the covering note or rider could be placed upon the policy; that his company had a form of covering note approving transfers of location and that if a request was made over the phone and the company was agreeable to the granting of the request, it would send through the mail one of these forms to

be attached to the policy or would require the insured to bring in his policy in order that it might be attached thereto in the office.

The officials of the defendants referred to in the testimony offered on the plaintiffs' behalf denied that they had ever received any request from the plaintiffs for an approval of the change in location of the goods covered by their respective policies or that they had any recollection of having had the telephone communications or visits from the plaintiffs' bookkeeper, as testified to by the plaintiffs' witnesses; but the jury upon the last trial of these cases evidently believed the plaintiffs' witnesses upon the subject as indicated by their verdict; and we are of the opinion that said evidence educed on the plaintiffs' behalf, if so believed by the jury, was sufficient to constitute an estoppel on the part of these defendants to deny that the plaintiffs' goods were covered by their respective policies in the new location from the date of their transfer thereto and up to their destruction by the great fire.

[3] The appellant London Assurance Corporation makes the further and final contention that the evidence is insufficient to show that F. W. Tallant had authority from said corporation to transfer the insurance upon said goods to their new location or to bind said corporation by any oral statements, acts, or conduct on his part sufficient otherwise to create an estoppel. We find no merit in this contention. Mr. F. W. Tallant had been connected with the local management of The London Assurance Corporation for several years prior to January, 1906, and bore the title of "Branch Secretary" indorsed upon the policies of the company and printed upon its letter-heads. The business of the plaintiff in carrying insurance in this company had always been transacted with him. He had attended to the details of the settlement made by plaintiff with the corporation for the losses occasioned by the former fire in the Chronicle Building and there was other testimony to the effect that it was the general understanding on the street that Mr. Tallant was in charge of the city department of The London Assurance Corporation. We think this evidence sufficient to justify the conclusion which the jury necessarily arrived at in this case as a prerequisite to their verdict that Mr. Tallant had authority to bind his principal by his statements, acts,

and conduct, to the extent of creating an estoppel in this particular case. Our conclusion from the foregoing reasoning is that as to these defendants and appellants the judgment should be affirmed.

We are next to consider the judgment of nonsuit rendered in the defendant's favor in the case against the Sun Insurance Office of London as presented for our review upon the plaintiffs' appeal. In the main the facts recited with relation to the two former cases have application to this appeal. There is, however, this material difference as to the essential facts which led the trial court to grant a nonsuit in this particular case. The policy of insurance which the plaintiff Henry Steil held in the Sun Insurance Office of London had been negotiated and procured by him through a firm of insurance brokers known as J. B. F. Davis & Son, who were not the regularly constituted agents of said insurance corporation, but were independent brokers placing such insurance as they were able to successfully solicit in such insurance companies as they might select and as would accept the risk. It cannot be seriously questioned but that ordinarily brokers doing this sort of business represent the insured and not the insurer. The appellants herein do not contend that in this particular transaction these brokers in procuring this insurance and placing it with the Sun Assurance Office of London were acting as the actual agents of the insurance company having formal authority from it to issue policies of insurance or to bind the insurer by written consent to changes in their terms as to location of the property insured, as required by their express stipulations. The utmost which the appellants claim is that these brokers had ostensible authority to act for the respondent in consenting to the change of location of the goods insured and in assuring the insured that his goods would be covered by the policy in the new location. This claim is founded upon the following facts, as shown by the evidence in the case, and which, according to the appellants' contention, were sufficient to avoid the motion for nonsuit. The testimony of Mr. Arthur Steil, who was the son and in charge of the business of Henry Steil, and who attended to the matter of placing his insurance, showed that he knew no one else in the matter of placing this particular insurance except the firm of J. B. F. Davis & Son as transacting business for and on behalf of the Sun Insurance Com-

pany and supposed them to be the agents of said company; and that after the transfer of the goods to the new location he had a conversation with a Mr. Wm. Romaine, manager of said firm of brokers, who came to his father's new place of business in the Shreve Building, in which he was assured that there would be no objection to the transfer and that the goods were covered in the new location. Mr. Romaine requested the Sun policy in order that he might take it down to the office and have the transfer indorsed thereon but both Mr. Steil and his father refused to allow the policy to go out of their hands on account of the pending unsettled claim arising out of the former fire, but depended on Mr. Romaine's assurance that they were covered by the Sun policy in the new location. The original Sun policy was destroyed in the fire of April, 1906, but it was conceded upon the several trials that it was similar in form to a sample policy of said company offered in evidence at these trials; and that on the back of said policy a sticker was pasted over the place thereon where the name and address of the actual and regular local agent of the Sun Company was printed, which sticker completely covered said name and address and contained the words "J. B. F. Davis & Son, Insurance Brokers, 240 Sansome Street, San Francisco." It also appeared that this firm of J. B. F. Davis & Son had been accustomed for a good many years to paste similar stickers upon policies of whatever insurance companies were handled through their office. It also appeared that a rider had been attached to said original policy prior to the removal of the goods from the Chronicle Building permitting certain alterations, additions, and repairs to be made in certain of the property covered by said policy, which rider had been signed by the regular local agent of said company, but across the face of which the stamp of "J. B. F. Davis & Son, San Francisco," had been prominently placed. There was also some evidence that the Sun Company had known of this custom of said firm of insurance brokers of placing their stickers and stamp upon policies passing through their office. The plaintiff offered no evidence whatever tending to show that any application had been made to the regular agent of the Sun Assurance Office of London for an approval of the transfer of location or that any such approval had been given or that the said regular representatives of said insurer had any

notice or knowledge of the change of location of said insured goods until after their destruction by fire. The plaintiffs' case rests solely upon the transactions with the firm of brokers above referred to and upon the assurance of the members and employees of said firm that the insurance would be carried by the insurer in the changed location of the goods insured. We are satisfied that this evidence on the plaintiffs' part is entirely insufficient to establish either an agreement on the part of this particular insurer to continue its insurance upon the plaintiffs' goods in the new location, or to warrant the conclusion that the insurer, by any acts or conduct on its part, either through its actual or ostensible agents, was estopped to deny the existence of such an agreement. The policy which was issued to the plaintiffs' predecessor by the Sun Assurance Office of London was signed, executed, and issued by C. A. Henry, its only regular and duly authorized agent in the city of San Francisco. The rider to said policy permitting certain alterations and re-pairs in certain of the property covered by its terms was also signed and executed by its said local agent. The name and title of said agent also originally appeared upon the back of said policy printed in the space which was later occupied by the sticker which J. B. F. Davis & Son pasted thereon, and there is no evidence in the record from which it could be found or fairly inferred that the regular agent of the said insurance company ever saw the policy which it issued to the plaintiffs' predecessor with the sticker of said firm of brokers pasted thereon over his own printed name and title as such agent. The said sticker of said firm of brokers did not purport to state that they were the agents of the insurance company issuing said policy, but simply that they were "brokers." The representative of said firm of brokers, when upon the witness-stand as a witness for the plaintiffs, stated that in handling insurance as brokers his firm represented the insured and there is no evidence to be found in the record controverting this assertion. The policy of the Sun Assurance Office of London contained the express stipulation and agreement that the property described therein and insured thereby was covered by said insurance only while the same was located in the Chronicle Building and not elsewhere. It also contained the express provision that "no officer, agent or other representative of

this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached.'' [4] While we have held in an earlier portion of this opinion with particular reference to the companion cases to this that an estoppel may be created by the acts and conduct of the duly authorized local agents and representatives of an insurance company, notwithstanding the foregoing provisions in the policy, it is clear that such estoppel cannot be created by the acts and conduct of a firm of brokers having no pretense of any connection with the insurer in the capacity of official agents or representatives and who throughout the entire transaction represented the insured and not the insurer. We are satisfied that the trial court was correct in holding as it did, in granting the said defendant's motion for nonsuit, that the plaintiffs in this particular action had not made out their case.

The judgment in each and all of the cases included in the consolidated record herein is affirmed.

St. Sure, J., and Tyler, P. J., concurred.

A petition by plaintiffs and certain defendants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 20, 1923.