[L. A. No. 18313.   In Bank.   Sept. 14, 1942.]

JOHN BLANTON, JR., a Minor, etc., et al., Respondents, v. ROBERT B. CURRY et al., Appellants.

Martin J. Coughlin and Fred A. Wilson for Appellants.

Bautzer & Ryan, G. Bentley Ryan, Gregson Bautzer, Flanagan & Sampson, Robert E. Ford, Bertin M. Weyl, Jr., and Perry Bertram for Respondents.

THE COURT.—This cause was by an order of this court transferred for hearing from the District Court of Appeal, Fourth District, after decision by that court. At the time of granting said order we were and now are in agreement with the conclusion reached by the District Court of Appeal upon many of the questions considered by that court in its decision, and for that reason we have adopted those portions of the opinion dealing with said questions as the opinion of this court upon the matters therein considered. The opinion of the District Court of Appeal was written by Justice Griffin.

We were not, however, in accord with the final conclusion of said court reversing the judgment. We have accordingly made an independent discussion of those matters in which

we are in disagreement with the District Court of Appeal. The discussion of these matters, together with those portions of the opinion of the District Court of Appeal with which we agree and which we have adopted, constitute the opinion of this court. It is as follows:

"This action has been before the court heretofore on an appeal from a judgment in favor of the defendants which was reversed for reasons therein stated. (*Blanton* v. *Curry,* 36 Cal. App. (2d) 575 [98 P. (2d) 221].) Most of the essential facts regarding the accident and injuries are there related.

"About 5:30 p. m. on December 12, 1936, John Blanton, Jr., was attempting to cross a thoroughfare known as Euclid avenue in the city of Upland, when he was run into by a Buick roadster automobile being operated by the appellant Curry. Euclid avenue is a street consisting of two roadways, each running north and south and having a 65-foot parkway in the center thereof planted with large pepper trees. Euclid avenue intersects G street. G street is a 34-foot street extending east and west but which at its intersection with Euclid avenue does not continue through to the west in a straight or right-angle course but dead-ends at the westerly curb of Euclid avenue. John Blanton, Jr., aged 12 years, and his brother Virgil, aged 14, were walking southerly on the sidewalk on the west portion of Euclid avenue, which roadway is 44 feet wide for a short distance before arriving at G street. They then pursued a course on an angle toward the southeast to cross the parkway above described and both the east and west roadways of Euclid avenue, which roadways are 37 feet wide. It was their intention to cross to the sidewalk of G street on the southeast corner of the intersection. As they reached the west curb of Euclid avenue, John Blanton, Jr., looked south but saw no cars coming from that direction. He then looked north and saw a car quite a distance away slowly approaching, with its lights burning. After stepping off the west curb of Euclid avenue at a place described by at least one witness as within the area which would be encompassed by the prolongation of the south curb line of G street and the south sidewalk line on the south side of G street near the middle of the roadway, John looked to the south. He then for the first time 'heard the motor' and saw a 'dark object' approaching 'almost on me' but he did not observe any lights on it. See-

ing that the car approaching would strike him if he remained in the position he was in when he observed the car for the first time, he darted in a northeasterly direction to complete the crossing and in an attempt to run out of the way of the car, but was struck while in the easterly half of the west roadway of Euclid avenue by the right portion of the appellants' automobile. He was rendered unconscious by a severe injury to his head. Virgil testified that he did not see any lights on the automobile of the appellants until after the car had come to rest, and at that time he did see the lights shining on the body of his brother which was about ten feet ahead of the standing automobile. Although the foundation for the opinion was quite unsatisfactory, he estimated the speed of the automobile at between '30 and 35 miles at least' when the car passed by, approximately a foot or two in front of him. Appellant Curry testified that he was operating his car in a northerly direction on the easterly half of the west roadway of Euclid avenue at approximately 20 miles an hour when suddenly there appeared in front of his left headlight the figures of the boys who approached his car from a northwesterly direction, apparently from a point just north of the unmarked crosswalk in question; that he did not see them until he was immediately upon them and was unable to avoid colliding with one of them.

"On a retrial of the case the jury returned a verdict for plaintiff John Blanton, Jr., in the sum of $10,000, and for plaintiff John Blanton in the sum of $466.10, against each of the defendants.

"It is now contended (1) that the giving of and refusal to give certain instructions was prejudicially erroneous. After giving an instruction to the effect that 'the burden of proof in litigation is on the party holding the affirmative of an issue; . . . It is not enough that the parties charged with the burden of proof produced some scintilla of evidence or enough evidence to raise a suspicion that the fact is as they contend; to maintain such contention it must be established by a preponderance of the evidence,' the court, on its own initiative, gave the following instruction (our letters used for identification):

"(A). 'The court further instructs you that the plaintiffs are not required to show particularly what the specific act of negligence was which produced the accident, but are only required to show that the collision is one which ordinarily

would not have occurred had due care been employed by defendant; when and if the plaintiffs made such proof, the burden of proof shifts to the defendants to show their freedom from negligence, or to show that the plaintiff, the minor plaintiff, was also negligent, and that his negligence proximately contributed to the collision.'

"Appellants contend that in effect this was an application of the doctrine of res ipsa loquitur; that the jury was instructed that the plaintiffs were not required to show any special act of negligence on the part of the defendant; that if the accident would not ordinarily have occurred had due care been employed by the defendants then the defendants were required to establish by a preponderance of the evidence their freedom from negligence; that the doctrine of res ipsa loquitur was not applicable to the case at bar and the giving of the instruction was prejudicial error." This instruction was taken almost verbatim from one given in the case of *Gonzalez* v. *Nichols*, 110 Cal. App. 738, 742 [294 Pac. 758]. While the court in that case held that the giving of the instruction was error, it further held, however, that the giving of it did not result in a miscarriage of justice, and affirmed the judgment in favor of the plaintiff at whose instance the instruction was given. In the discussion of this subject the court said at page 742: "The giving of this instruction was therefore error. It remains to be determined whether this error is sufficient to require a reversal of the cause. Elsewhere in the instructions the jury were repeatedly told that the burden was on the plaintiff to prove by a preponderance of the evidence that the negligence of the defendant was the proximate cause of the injury. In *Tower* v. *Humboldt Transit Co.*, 176 Cal. 602 [169 Pac. 227], an instruction on the doctrine of res ipsa loquitur was held erroneous because not applicable to the facts. While the Supreme Court reversed the case because of that and other instructions, yet the court pointed out that the proof of negligence in that particular case was so unsatisfactory that the errors in instructions could not be disregarded under the provisions of section 4½ of article 6 of the Constitution. Here, however, an exceptionally clear case of negligence is presented. We are therefore of the opinion that the giving of this instruction cannot be said to have resulted in a miscarriage of justice."

In the instant action the proof of defendant Curry's neg-

ligence cannot be said to be unsatisfactory. The undisputed evidence, as we will hereinafter show, proves conclusively that he failed to yield the right of way to John Blanton, Jr., as the latter was crossing the roadway in an unmarked crosswalk. The plaintiffs therefore made out "an exceptionally clear case of negligence," to use the language of the Gonzalez case, against the defendant Curry, and therefore the giving of the res ipsa loquitur instruction did not result in a miscarriage of justice.

"The next two questioned instructions (B and C) involved the right of the plaintiff to presume that the defendant would obey the law. It is argued that neither of these instructions contained the necessary limitation that the plaintiff should be exercising ordinary care before he would be entitled to assume that the defendant was exercising ordinary care. A similar instruction with slight variations to meet the factual situation involved was approved in *Schroeder* v. *Baumgarteker*, 202 Cal. 626, 628, [262 Pac. 740]. Immediately following the two criticized instructions the court said: 'And the defendant Curry had a right to expect that the minor plaintiff, or anyone else of his age and experience, would cross the highway in a careful and prudent manner.' It thus appears that the court told the jury in effect that both the minor plaintiff and the defendant Curry had a right to assume that the other would obey the law and would exercise due care and caution in respect to their use of the highway. While it may be true that they do not contain all of the elements which should enter into instructions of this character, the instructions, when considered as a whole, were no less favorable to the defendants than to the plaintiffs and not so incomplete as to justify a reversal of the case.

"Objection is made to instruction lettered (D), (plaintiff's instruction No. 7), upon the question of the right of way at a crosswalk. Exception is taken to this instruction particularly as to the use of the term 'crosswalk,' as defined in section 85 of the Vehicle Code, viz: 'That portion of a roadway ordinarily included within the prolongation or connection of the boundary lines of sidewalks at intersections where the intersecting roadways meet at approximately right angles, . . .' It is contended that there was no crosswalk at the intersection in question because there was no sidewalk, the boundary lines of which could be prolonged on the highway under consideration; that because there was no side-

walk across the highway adjacent to G street as it intersected the parkway, there was consequently no crosswalk over the westerly roadway of Euclid avenue in the vicinity where the accident occurred which could be attributed to the prolongation of a sidewalk across the parkway; that any claimed crosswalk across the east roadway of Euclid avenue would not constitute the prolongation of any sidewalk paralleling G street, as that sidewalk terminated and merged in the sidewalk paralleling Euclid avenue; that the above-quoted section of the Vehicle Code limited unmarked crosswalks to those which were the result of a prolongation of the boundary lines of sidewalks and removed the portion of the roadway under consideration from those classified as crosswalks. In other words, it is appellants' contention that there was no legally defined crosswalk at the place of the accident.

"Upon the first appeal in this case the appellants urged this identical point and argued that these particular instructions which the court refused to give and which were requested at the first trial were erroneous in defining the rights of pedestrians at crosswalks. It was there held that these instructions were in accordance with the law and that it was error to refuse to give them. In their petition for a hearing in the Supreme Court the appellants again made the same argument which again was disposed of adversely to their contention. The conclusion of the upper court reached on the former appeal, after considering the instructions given at the first trial, constitutes the law of the case in this respect and is binding upon the parties in the subsequent trial thereof. (*Reid* v. *Northern Assurance Co.*, 63 Cal. App. 114 [218 Pac. 290]; *Table Mt. T. Co.* v. *Stranahan*, 21 Cal. 548.)

"Irrespective of this conclusion, section 85 of the Vehicle Code defines an unmarked crosswalk as the 'portion of a roadway *ordinarily* included within the prolongation or connection of the boundary lines of sidewalks at *intersections*. . . .' [Italics added.] Section 86 of the Vehicle Code defines an intersection as 'the area embraced within the prolongation of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways, of two highways *which join* one another at approximately right angles or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict.' [Italics added.] It has been uniformly held that where a street joins with or crosses a double street, that is, where one whose two traveled

portions are separated by a private right of way or parkway, there is one intersection within the meaning of our statute. (*Cruzen* v. *Wilcox*, 20 Cal. App. (2d) 728 [67 P. (2d) 709]; *Driscoll* v. *Shipp*, 13 Cal. App. (2d) 591 [57 P. (2d) 177]; *Lowenbruck* v. *Stiglmeier*, 7 Cal. App. (2d) 204 [46 P. (2d) 251]; *Schulman* v. *Los Angeles Ry. Corp.*, 44 Cal. App. (2d) 122 [111 P. (2d) 924]; *Colburn* v. *Schilling*, 41 Cal. App. (2d) 541 [107 P. (2d) 279]; *Kienlen* v. *Holt*, 106 Cal. App. 135 [288 P. 866].) The intersection here involved comes within the provisions of Sections 85 and 86 of the Vehicle Code.

■ ''On its own initiative the court gave this instruction: ''(E) 'Our streets are dedicated to the use of the public at all times, the old and the young, the strong and the active. The driver of a vehicle must, accordingly, take precautions that he will not do injury which may be injurious or fatal to any of the users of the highway.'

''Appellants complain because this instruction in effect, it is claimed, advised the jury that the driver of a vehicle was required to take such precautions as would prevent injury to any of the users of the highway; that the obligation on the part of the driver of an automobile is to exercise ordinary care; that the instruction in question obligates the driver of a motor vehicle to 'take precaution that he will not do injury'; that this, in effect, makes the driver of an automobile an insurer of the safety of the users of the highways; and that appellant was only required to take such precaution as would be taken by an ordinarily prudent person under the circumstances, citing *Prato* v. *Snyder*, 12 Cal. App. (2d) 88, 95 [55 P. (2d) 255]. This instruction as given and standing alone meets with condemnation for the reason that the question whether the user of the highway was himself negligent is not taken into consideration. (*Thompson* v. *Baldwin*, 26 Cal. App. (2d) 703 [80 P. (2d) 198].) The basis of the instruction is that in the enjoyment of a common right the participant must exercise constant care that the correlative rights of others may not be unnecessarily impaired or destroyed. (*Meyers* v. *Bradford*, 54 Cal. App. 157 [201 Pac. 471].) The criticized portion of the instruction was taken out of the context of an instruction in which the court told the jury 'that every person has a right to presume that every other person will perform his duty and obey the law. . . . Specifically applying that instruction to the case before you, the

plaintiff in this case had the right to expect that the defendant Curry would drive his car with due care and circumspection and caution; and the defendant Curry had a right to expect that the minor plaintiff, or anyone else of his age and experience, would cross the highway in a careful and prudent manner.' Then followed the criticized quoted portion. The instruction, when considered as a whole, is not prejudicially erroneous.

■ "Relative to the degree of care required of minors the court gave this instruction which was deficient:

"(F) 'You are to determine with reference to the pleadings what would an ordinarily prudent child *of the age* of the boy at the time of the accident do under similar circumstances, or the same circumstances. (Italics ours.) . . . In determining the question . . . you must take into consideration, as I have indicated to you, that he is to be judged by the standard of due care of a child of his age at the time of the injury, and that the defendant Curry should be judged by the standard of the age which he appears to be, as to care and caution.'

"A more complete rule is stated in *Todd* v. *Orcutt*, 42 Cal. App. 687, 691 [193 Pac. 963], where the court said that 'plaintiff was required to exercise the same degree of care, no more and no less, than would be expected from a child of his age, *or which children of his years ordinarily exercise under like circumstances, taking into consideration not only the boy's age, but his capacity for understanding.'* (Italics ours.) The court did give additional instructions, one covering part of the deficiency complained of which appellants also criticize, without merit, for other reasons. It reads in part:

"(G) 'The plaintiff in the instant case ,is a minor and judgment is not passed on his conduct with the same strictness as in the case of adults. Children are not regarded as possessing the same mental capacity to appreciate the danger incident to the use of a public thoroughfare as those of mature age. What is required of a child is that he shall exercise the same degree of care as will ordinarily be expected of a reasonably careful child of the same age and intelligence under like circumstances.'

"In addition to many similar instructions, at appellants' request the court gave an instruction to the effect that:

"(H) 'The fact that the plaintiff was a boy between 12

and 13 years of age did not free him of the obligation of exercising ordinary care for his own protection. He was required to exercise that care which an ordinarily prudent person of his age, discretion, and intelligence would have used under the circumstances.'

"The plaintiff John Blanton, Jr., being a minor, was entitled to an instruction as to the duty of care exacted of minors. (*Bowdoin* v. *Southern Pacific Co.*, 178 Cal. 634 [174 Pac. 664].) Similar instructions have been upheld. (*Studer* v. *Southern Pacific Co.*, 121 Cal. 400, 404 [53 Pac. 942, 66 Am. St. Rep. 39]; *Shannon* v. *Central-Gaither Union School District*, 133 Cal. App. 124 [23 P. (2d) 769].)

"It is argued that it is equally as dangerous for a minor as for an adult to cross a street after ascertaining the approach of an automobile. There can be no claim that the jury was incorrectly advised as to the law in this respect.

"Appellants next complain of an instruction (I) given on the court's own motion, on the question of burden of proof. This instruction informed the jury that 'the burden is on the defendants to establish the affirmative allegations of their answer, for example, regarding the point of contributory negligence . . . that is, negligence of the minor plaintiff, which proximately contributed to the injury of the plaintiff, the burden is on the defendants to sustain that contention.'

"Appellants argue that the instruction did not clearly state the rule which is that the defendants have the burden of proving contributory negligence, *unless it affirmatively appears* from the plaintiffs' own evidence, citing *Marr* v. *Whistler*, 49 Cal. App. 364, 371 [193 Pac. 600]; *Soda* v. *Marriott*, 118 Cal. App. 635, 642 [5 P. (2d) 675]. The rule, correctly stated, is that negligence on the part of a plaintiff is a matter of defense to be proved affirmatively by a defendant unless it can be inferred from the evidence given in the plaintiffs' case. (*Marr* v. *Whistler, supra.*) In *Daniel* v. *Asbill*, 97 Cal. App. 731 [276 Pac. 149], the appellant claimed that a similar instruction was erroneous. In answering that argument the court held that the instruction was a correct statement of the law and did no more than inform the jury as to the question of the burden of proof; that if the defendant desired a further instruction to be given, he should have requested it, but, obviously, no harm could have resulted from the giving of the instruction. To like effect see *Rich-*

*mond* v. *Moore,* 103 Cal. App. 173 [284 Pac. 681]. ▆
Appellant offered no additional instruction on the subject.
Although incomplete in form, no harm could have resulted
from the giving of the criticized instruction.

▆ "On its own motion the court gave this instruction:
"(J) 'In order that contributory negligence may be suc-
cessfully established as a defense, it must be first shown that
negligence of plaintiff alleged to be contributory negligence,
concurred and cooperated with the negligence of the defen-
dants *up to the very time of the injury.'* (Italics ours.)

"Appellants charge error because this instruction led the
jury to believe that the failure of the minor plaintiff to look
before crossing the roadway may not have proximately con-
tributed to the accident because it occurred prior to the 'very
time of the injury' and did not concur and cooperate with
the negligence of the defendants 'up to such time,' and
argue that the error was aggravated by the refusal of the
court to give two of appellants' instructions bearing on the
question. To say that the negligence of a plaintiff, in order
to be contributory, must concur and cooperate with the negli-
gence of a defendant up to the very time of the injury is not
a complete statement of the rule. (*Salomon* v. *Meyer,* 1 Cal.
(2d) 11 [32 P. (2d) 631].) It is apparent that the court
was endeavoring to paraphrase the rule that the proximate
cause of an injury is that cause which in natural and con-
tinuous sequence, unbroken by any efficient intervening
cause, produced the injuries, and without which the results
would not have occurred; that the defense of contributory
negligence is predicated upon a defendant's own negligence;
and that any want on the part of a plaintiff of the care which
is appropriate under the circumstances is negligence and will
prevent a recovery if it be one of the proximate causes of the
injury. (Civ. Code, § 1714; *Wiezorek* v. *Ferris,* 176 Cal.
353 [167 Pac. 234]; *Konig* v. *Lyon,* 49 Cal. App. 113 [192
Pac. 875]; *Steinberger* v. *California Electric etc. Co.,* 176
Cal. 386 [168 Pac. 570].) The instruction as given, when
considered with other proper instructions on the subject, was
not harmful. Similar instructions have been approved. (19
Cal. Jur. 649, § 78.)

▆ "The court voluntarily on its own motion gave sev-
eral instructions, designated (K), which outline a general
rule respecting both plaintiffs and defendants as to the duty
to look and see that which they could have seen had they

looked. In many instances the court commented with words to this effect: 'In determining that issue, you must take into consideration the age of John Blanton, Jr., and the maturity of Curry, of course.' Appellants contend that the court over-emphasized the matter of the age of respondent John Blanton, Jr., and accordingly cast a greater burden on the defendants than on the minor respondent to look and see. No error appears. (*Duehren* v. *Stewart*, 39 Cal. App. (2d) 201, 209 [102 P. (2d) 784].) Courts, of course, should not unduly emphasize matters contained in instructions which would be detrimental to either party. Minors, as well as adults, are required to exercise ordinary care, but it is well settled that the ordinary care which a child is required to exercise must be determined by a different rule than is required in the case of adults. (*Mayne* v. *San Diego Electric Ry. Co.*, 179 Cal. 173, 178 [178 Pac. 690]; *Schierhold* v. *North Beach & M. R. R. Co.*, 40 Cal. 447.) It was therefore proper to say to the jury in effect that in determining whether or not the failure of the minor plaintiff to see, if he looked, assuming it did find that he looked and failed to see, constituted negligence, it should take into consideration the fact that he was a minor. It cannot be said that the action of the trial court in this respect was erroneous.

"The trial court, *by way of explanation and example*, orally instructed the jury (L) that the judgment in the case might be for $10,000 against Curry, the driver, but could be for only $5,000 against Koehler, the owner of the car, but if Koehler was the principal and Curry was the agent, as stipulated, then there was no such limitation as to Koehler. The jury returned a verdict of $10,000 against both, the same amount suggested in the example. Appellants complain because they believe the jury followed the suggestion of the court and not the evidence as to the amount of damages. It is difficult to appraise the power of suggestion, especially as between the trial judge and the jury. Precaution should be taken to prevent criticism in this respect. In the instant case, however, the trial court did specifically inform the jury that the amount stated was 'as an example, and not in any way as a suggestion.' While this instruction is not to be commended, standing alone, it cannot be considered prejudicially erroneous.

"The court in one instruction (M) upon the issue of damages, on its own motion, said: '. . . damages, if any

. . . may be awarded for the detriment resulting after the commencement of the action and for damages *resulting in the future.* . . . You are to take into consideration . . . pain and suffering to the injured in the future, if any, *which are the result proximately of the collision.'* (Italics ours.) The instruction is claimed to be prejudicially erroneous because it did not contain the limitation 'for detriment resulting or *certain to result* in the future,' citing *Melone* v. *Sierra Ry. Co.,* 151 Cal. 113, 116 [91 Pac. 522]; Civ. Code, sec. 3283. This was the only instruction upon the issue of future damages. It is clear that the instruction as worded does not use the term 'certain to result,' as used in section 3283 of the Civil Code. Since the decision of *Melone* v. *Sierra Ry. Co., supra* [1907], several cases have been before our higher courts which, to some extent, have relaxed the rule therein stated. In several of these cases the courts discuss the propriety of instructions relative to future damages which do not contain the words 'certain to result in the future' and which appear to be less favorable to a defendant than the instructions in question here. They are held to be proper and not to constitute error. (*Zerbo* v. *Electrical Products Corp.,* 212 Cal. 733, 735 [300 Pac. 825]; *Learned* v. *Peninsula R. T. Co.,* 49 Cal. App. 436, 439 [193 Pac. 591].) We do not believe the language used in the instruction is such that it left the estimation of future damages to the conjecture or whim of the jury as contended. Although the word 'certain' does not appear in the instruction as given, nevertheless the element of certainty is present and there can be no room for conjecture when the jury has been limited to the loss or damage 'resulting in the future' which the evidence shows the minor plaintiff will sustain and 'which are the result proximately of the collision.' The instruction given, while not a model to be followed in the future, cannot be held to be prejudicially erroneous.

▮ "The trial court refused appellants' instruction 25 (N), offered in the language of section 562, subdivision (a) of the Vehicle Code (1935)." Appellants contend that the refusal to give this instruction was error for the reason that there was evidence that John Blanton, Jr., might have been crossing the roadway at a point other than in an unmarked crosswalk at the time he was first seen by defendant Curry. If there was any such evidence it must be found in the testimony of defendant Curry. At most his testimony on the

location of John Blanton, Jr., at the time in question is far from satisfactory and in our opinion was entirely insufficient to establish this point. He testified that he saw the two boys coming to him from the west, and "it couldn't have been more than five or six feet from my left-hand bumper." Continuing, he testified: "When I first saw the first boy (John Blanton, Jr.) he was two good steps away; if he had stopped right then, or maintained his course, I would have hit him with my left front fender; as it was, I hit him on the right side of my car." He also testified that when he first saw the two boys, they were coming toward him from a northwesterly direction; that then John turned off in the opposite direction, which would be in a northeasterly direction. Again he was asked the question: "With relation to that intersection (where G Street intersects the west roadway of Euclid Avenue) where were you when you first observed the Blanton Boys?" His answer to this question, and further questions and answers were: A. "I was even with the curve of the curb line: the front of my bumper was *almost* even with the north curb line." (Emphasis ours) Q. "Go down there and point it out and then we will mark it." (A. "I was coming north, here. (indicating)" Q. "Point to the place where you and your car were when you first observed either of the boys." A. "To the best of my ability my car was practically right there. (indicating)" Q. "Make a little cross there in red—just draw it in there in the form of a rectangle, so we will have some idea where the front of your car and the rear of your car was." A. "(Witness marks on diagram)" Q. "Now we will mark that place 'C 1' off to the right so we will know what it is."

The original of the map used at the trial and referred to by this witness (Plaintiff's Ex. 1) was forwarded to the District Court of Appeal and is now before us. "C 1", the red rectangle apparently placed thereon by the witness as indicating the location of his car when he first saw the Blanton Boys, is clearly shown on this exhibit. It bears out the testimony of defendant Curry that at the time in question "he was even with the *curve* of the curb" but it does not show that he had reached the north curb line. The map is drawn to a scale of 1 inch to 10 feet, and shows that the distance between the north end of the red rectangle and this north curb line is practically 6 feet. The testimony of the defendant Curry places John Blanton, Jr., therefore at least

on the north line of, if not within the crosswalk. It is interesting to note that in appellants' opening brief they do not rely upon any evidence of the defendant Curry in support of their claim that John Blanton, Jr., was crossing the roadway at a point other than within the unmarked crosswalk. The only evidence cited in their opening brief upon this subject was the testimony of Virgil Blanton, given by him on cross-examination, in an effort by appellants to impeach this witness by showing that he had made contrary statements on other occasions. This evidence was admitted solely for the purpose of impeachment and could not be considered as independent evidence of any fact to which the impeaching evidence related.

Some reliance is also placed on Curry's testimony that when his car stopped, it was approximately 30 feet from the point where he was when he first saw this boy, and that he stopped in about 12 feet after striking John, which, it is contended, shows that his car traveled 18 feet from the point he was when he first saw the boys to the point where he struck John. We do not think that this conclusion follows from this evidence of Curry. He further testified that as soon as he saw the boys he applied the brakes of his car, and that John Blanton, Jr., changed his course and ran in a northeasterly direction away from the car. With the speed of the car slackened by the application of the brakes and the boy running away from the car, the distance of 18 feet may well have been traveled by the boy before the car finally hit him.

We have carefully and minutely examined the evidence in the case relied upon by the appellants in proof of their claim that the boys when first seen by Curry, and when they first saw him, were crossing the driveway outside the unmarked crosswalk, and we fail to find any such evidence in the entire record. It was therefore not error on the part of the trial court to refuse to give instruction No. 25 proposed by appellants.

"The court refused appellants' instruction No. 10 (O). The evidence produced by appellants indicates that some cars use the east roadway or lane of Euclid avenue, both northbound and southbound; that a portion of the northbound traffic also uses the east half of the west roadway of Euclid avenue." Upon cross-examination defendant

Curry was interrogated with the apparent effort to establish that the westerly roadway of Euclid avenue was used principally by southbound travel. The purpose of this cross-examination does not clearly appear from the record thereof as revealed by the reporter's transcript. It covers only a single page. The refused instruction was as follows: "You are instructed that at the time and place involved in this case, Euclid avenue consisted of two separate highways; that for the purpose of traveling thereon, each highway constituted a complete highway, which could be lawfully used as such, independent of the other highway, and that upon each of said highways, it was lawful to travel in both directions."

It was held in the case of *Raymond* v. *Hill*, 168 Cal. 473, 484 [143 Pac. 743], under the facts of that case, that it was error to refuse to give such an instruction, and the judgment was reversed for that and other errors. That case was decided before the enactment of section 4½ of article VI of the Constitution. There was no occasion therefore to pass upon the question as to whether the error was prejudicial. Nor does it appear from the decision of that case that the court would have reversed said judgment for that single error had not the court held that there were other serious errors committed by the trial court.

In respondents' brief in answer to the appellants' claim of error for the refusal to give said instruction, it is stated: "At no time was any suggestion made to the jury that the defendant was operating his automobile in an improper roadway, or in an improper direction." There is no denial of this statement by appellants in either their reply brief or in their reply to the petition for hearing. We may well assume, therefore, from this statement and the appellants' failure to deny it, that no claim was made during the trial of the case that the defendant Curry was negligent in driving northerly on the westerly driveway. Assuming therefore that said instruction contains a correct statement of the law respecting travel upon a street or avenue consisting of two separate driveways, as no claim was made during the trial of the case before the jury that defendant Curry was negligent in driving in an improper driveway, it cannot be held that the trial court committed error in refusing to give said instruction. Whether the instruction is a correct statement of the law applicable to the subject under discussion is not neces-

sary for us to decide, and we expressly refrain from rendering any opinion thereon.

■ "The appellants called Paul V. Snyder, a storekeeper in Upland, California, who testified that on the night of the accident appellant Curry came to his store to make a purchase and upon leaving called attention to the fact that one of the lights on his car was out; that thereupon Curry got into his automobile and changed the beam; that the lights were then satisfactory; that the witness so indicated to appellant who then drove away north on Euclid avenue. At the previous trial Snyder had been called by the appellants and testified to the same effect. Before the second trial, for some reason, Snyder was subpoenaed by the respondents through a Mr. Kerr. After the witness testified for the appellants, upon cross-examination respondents endeavored to impeach his testimony as follows:

" 'Q. Did you tell Mr. Kerr at that time, before you came up to this trial to testify for the plaintiff that you would want $25 to come up? A. I told Mr. Kerr that it was worth that much to leave my business and lock it up because I operate it almost single-handed, with the exception of a delivery boy. Q. Mr. Kerr told you that he would give you the exact mileage provided by law plus $4? A. No, he didn't. Mr. Kerr refused to pay me anything. I presume it was because he knew I was subpoenaed by the other side; and he said he had no authority to make any payment . . . Q. But you demanded $25 of him? A. I didn't demand $25; I told him it was worth that if I closed up my business. Q. And you told him you would not do anything unless you get your $25, isn't that correct? A. No, that is not true.'

"Thereupon the court took up the examination and instead of accepting the witness's testimony that he had not demanded $25 as a fee to appear as a witness for the plaintiffs, assumed the attitude of the attorney for the plaintiff that the witness had demanded $25 as a fee for appearing in court. The court then proceeded to examine the witness upon the assumption that his testimony had been purchased by the appellants as evidenced by the following part of the record: 'By the Court: When you were subpoenaed by the defendants, were you paid a fee? (Objection by Mr. Wilson.) The Court: I want to know if this witness is at all partisan. You will answer the question. (A) I was not paid fees at the time, I was paid fees before I came on the witness stand.

Q. Did you demand fees of the process server who served process for the defendants? A. I did, and he told me that he would take care of it under the circumstances that he did at the first trial; due to the fact that I would have extra expense of the store, he was glad to take care of that. Q. How much have you been paid for coming in here? A. $15 . . . Q. And you wanted $25 from the process server of the plaintiff also? A. No, I didn't ask him for $25, I told him that it would cost me that much to come—the loss of time and business. Q. You were attempting to get $25 out of the plaintiff, plus the extent of your extraordinary expenses from the defendant? A. . . . I didn't know how much time would be required, and might have to come one day for one side and one for the other. Q. (By the Court): You realize that courts of law are entitled to some consideration, and your duty is to come in and serve the court when you are served with process. (Objection by Mr. Wilson.) The Court: Overruled. What I am concerned with is the demand of this witness for compensation considerably beyond the statutory requirement, the statutory fees and the statutory mileage; and the reason I am concerned about that is to determine whether or not this witness is interested, by the fact that he has been paid money by the defendant in excess of that to which he is entitled. A. I didn't know in civil actions that I was forced to comply with subpoenas of that kind; I know that I would in criminal actions. Q. You are a citizen, I take it. A. Yes, sir. The Court (addressing the jury): Because of the extraordinary character of the examination of this witness, you are not to reach a conclusion prejudicial to the defendant, except insofar as the weight of the testimony of this witness is concerned. This witness's examination as to his compensation was to determine the weight of his testimony, as to whether he was influenced by receiving fees beyond the statutory provisions. . . . The only prejudice the defendant can suffer is as to the weight of this witness's testimony. The court made a special inquiry because of the surprise of the court that any man, that any citizen, could think that he had a right to fix his own fee for coming in and testifying in the courts of law. The processes of our courts are mandatory; the functions of government are far more important than the personal rights of any individual and our citizens must respond to the agencies of the government *without being bought.*' (Italics ours.) 'Mr. Wilson:

With all due respect and deference to Your Honor, may I now note an exception to the concluding remarks of the court insofar as they may, if they do, reflect on the defendant or the defendants' case now on trial? The Court: Very well, you may have an exception.'

"It is now contended by the appellants that the effect of this examination by the court, regardless of his instructions or his statements, was to leave the jury with the impression that the testimony of the witness had been purchased by the appellants; that the witness had committed some irreparable offense for accepting money from a person who was willing to reimburse him against loss; that regardless of the witness's denial, the court was convinced that he had demanded a witness fee of $25 from the defendants and that no weight should be given to this testimony; that the attitude of the court, as expressed by his words and actions, resulted in a complete rejection of the witness's testimony and a natural discrediting of the appellants' case."

The cross-examination of this witness by the court can neither be justified nor approved. It undoubtedly impaired, if it did not entirely destroy, the weight of the evidence given by the witness. The admonition of the court that the jury should not, by reason of such cross-examination, reach a conclusion prejudicial to defendant, could not in our opinion remove the injury resulting from such examination. Had the testimony of this witness related to matters which involved the entire defense of appellants, then it would be necessary to hold that the error of the court was prejudicial to their rights. However, his evidence relates to but one phase of the case before us, that in regard to the lights on Curry's machine. As Justice Marks stated in his dissenting opinion in this case: "If those lights had been illuminated Curry should have seen the two boys in the unmarked crosswalk and should have yielded the right of way to them. If they were not illuminated, that fact, in itself, constituted negligence." Conceding that they were illuminated, then Curry was not negligent in driving without his lights burning, but that fact did not excuse him in failing to yield the right of way to the respondent John Blanton, Jr., as the latter was crossing the roadway in an unmarked crosswalk. With this fact established by the undisputed evidence in the case, the negligence of the defendant Curry was clearly proven as the proximate cause of the injury sustained by the respondents.

While there were errors committed during the trial of the case they were not of such a serious character as to unduly prejudice the rights of the appellants. They do not therefore justify a reversal of the judgment.

The judgment is affirmed.

Appellants' petition for a rehearing was denied October 8, 1942.