[Civ. No. 14862. Third Dist. Oct. 2, 1975.]

MANUEL J. BETTENCOURT et al., Plaintiffs and Appellants, v. THE STATE OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

William W. Coshow for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, and John M. Morrison and Bruce J. Braverman, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**PARAS, J.**—Following the rejection of their claim against the State of California (State), plaintiffs filed a complaint alleging that defendant entered plaintiffs' property by cutting a wire fence in order to fight a grass fire of unknown origin. The complaint further alleged that after extinguishing the fire and vacating plaintiffs' property, defendant negligently and carelessly failed to repair the fence or to notify plaintiffs of its condition so that they might repair it; as a proximate result, plaintiffs' cattle went through the opening onto Interstate Highway 5 where they were struck and killed by vehicles traveling thereon, to plaintiffs' damage in the sum of $1,765.60. The trial court sustained defendant's demurrer with leave to amend. Plaintiffs declined to amend, judgment of dismissal was entered, and this appeal followed.

■   The question is whether Government Code section 850.4[1] confers immunity upon the public entity for the conduct of its employees under the facts in this case. Section 850.4 provides in pertinent part as follows: "Neither a public entity, nor a public employee acting in the scope of his employment, is liable for any injury resulting from the condition of fire protection or firefighting equipment or facilities or . . . *for any injury caused in fighting fires.*" (Italics added.)

Plaintiffs concede that the State, pursuant to section 821.8, had the authority to cut the fence and enter the property to fight the fire.[2] They maintain, however, that neither section 821.8 nor section 850.4 immunizes the defendant, because they have not alleged that the State was negligent "in fighting fires" on their property; rather the alleged negligence was in not repairing the fence or notifying the plaintiffs, *after* the fire had been extinguished.

We have carefully considered the plaintiffs' contention and have concluded that it cannot be sustained. The plaintiffs' injury came about because the defendant State, according to the complaint, "entered plaintiffs' . . . property by cutting a wire fence in order to fight a grass fire of unknown origin;" the cattle then went through the open fence and were destroyed. Nothing could be more clear than that the injury was "caused" by the defendant "in fighting fires"[3] within the meaning of section 850.4; therefore again nothing could be more clear than that immunity for this injury was intended by the statute. To accept plaintiffs' argument would be to transpose this positive reality into its negative counterpart and then to mischievously nullify it. Much of the immunity conferred by section 850.4 would thus evanesce, for with a theoretical negative ever present, a plaintiff need only allege his affirmative facts in their negative counterpart to thwart the legislative intent.

This semantic technique could be applied in turn to other immunity statutes, similarly emasculating them. Paradigmatically, section 856.2 gives public entities immunity for injury caused by an escaped inmate of

[1]All section references are to the Government Code.

[2]Section 821.8 provides: "A public employee is not liable for an injury arising out of his entry upon any property where such entry is expressly or impliedly authorized by law. Nothing in this section exonerates a public employee from liability for an injury proximately caused by his own negligent or wrongful act or omission."

[3]A proximate cause of an injury is a cause which, in natural and continuous sequence, produces the injury, and without which the injury would not have occurred. (Cal. Jury Instructions, Civ. (BAJI) (5th rev. ed. 1969) No. 3.75; see also *Blanton* v. *Curry* (1942) 20 Cal.2d 793, 805 [129 P.2d 1].)

a mental institution; a plaintiff is injured by the escapee; the plaintiff would say that the injury was caused not by the escaped inmate, but by the public entity's negligent failure to apprehend him. Section 818.2 provides, inter alia, an immunity against any injury caused by the adoption of an enactment; a plaintiff is injured by the passage of an ordinance; the plaintiff would assert that it was not the adoption of this law which caused the injury, but the failure to repeal it. Section 818.4 provides, inter alia, for public entity immunity against any injury caused by the issuance of a permit or license; a plaintiff is injured by a permittee who, without the permit, would not have injured him; the plaintiff would claim that it was not the issuance of the permit that caused the injury but the failure to revoke it thereafter. Section 818.8 gives a public entity an immunity for injury caused by a misrepresentation of its employee; a plaintiff is injured by such a misrepresentation; he maintains that it was not the misrepresentation that caused the injury but the failure later to retract it or to warn of it.

Moreover our Supreme Court has already ruled on this very issue in closely analogous circumstances. In *Heieck and Moran v. City of Modesto* (1966) 64 Cal.2d 229 [49 Cal.Rptr. 377, 411 P.2d 105], the plaintiff claimed that when the fire department attempted to fight a fire on his property, it was unable to do so because city employees had earlier (a month before) closed a valve in the water main for relocation of other mains and failed to reopen it, without giving notice of such failure. Thus plaintiff argued the analogue of this case, that it was not the condition (the closed valve) of the firefighting equipment (as to which § 850.4 gave conceded immunity) that caused the damage, but the failure later to reopen it. The Supreme Court summarily rejected the contention, saying: "Thus whether the alleged injury to plaintiff's premises be viewed as resulting from 'failure to provide or maintain sufficient . . . fire protection facilities' (§ 850.2), or from the closed 'condition' of the water valve (§ 850.4) the *conclusion is inescapable that the Legislature intended to establish immunity* under the circumstances alleged by plaintiff." (Italics added.) *(Heieck and Moran v. City of Modesto, supra,* at p. 233.) The *Heieck* court explained further: "It may be noted that this view is consistent with the report of the California Law Revision Commission, which in commenting on Government Code sections 850, 850.2, and 850.4 makes clear that it rejected suggested limitations on immunity for negligent fire protection, such as those now advanced by plaintiff. 'Section 850.4 provides for absolute immunity from liability for injury caused in fighting fires (other than injuries resulting from operation of motor vehicles) . . . .' (4 Cal. Law Revision Com. Rep., p. 862; italics

added.) Professor Van Alstyne also recognized (Van Alstyne, Cal. Government Tort Liability (Cont. Ed. Bar 1964) pp. 309, 618) that the Legislature did not adopt suggested limitations on such immunity made in his study (reprinted in 5 Cal. Law Revision Com. Rep., pp. 467-468), but instead adhered to existing immunity rules when it recast the entire law of governmental liability and immunity in 1963." (*Id.,* at p. 233, fn.3.)

Commenting on *Heieck*, Professor Van Alstyne noted the Supreme Court's clear conclusion that with regard to the subject matter of section 850.4 the legislative intent was that of "expanded immunity." (Van Alstyne, Cal. Government Tort Liability Supp. (Cont. Ed. Bar 1969) § 7.28, pp. 71-72.) *Heimberger* v. *City of Fairfield* (1975) 44 Cal.App.3d 711 [117 Cal.Rptr. 482], also supports our conclusion as does *Connelly* v. *State of California* (1970) 3 Cal.App.3d 744, 751 [84 Cal.Rptr. 257].

The judgment is affirmed.

Puglia, P. J., concurred.

**REGAN, J.**—I dissent. Plaintiffs concede that the State, pursuant to section 821.8,[1] had the authority to cut the fence and enter the property to fight the fire. This section provides: "A public employee is not liable for an injury arising out of his entry upon any property where such entry is expressly or impliedly authorized by law. Nothing in this section exonerates a public employee from liability for an injury proximately caused by his own negligent or wrongful act or omission."

Plaintiffs argue this section of the code does not exonerate a public employee from liability caused by negligent conduct though associated with an authorized entry.

Section 850.4, relied upon by the State, provides as follows: "Neither a public entity, nor a public employee acting in the scope of his employment, is liable *for any injury resulting from the condition of fire protection or firefighting equipment or facilities* or, except as provided in Article 1 (commencing with Section 17000) of Chapter 1 of Division 9 of the Vehicle Code,[2] *for any injury caused in fighting fires."* (Italics added.)

---

[1]All section references are to the Government Code.

[2]Re injuries resulting from operation of motor vehicles.

Plaintiffs contend section 850.4 does not apply in this case. Referring to the italicized language of the statute, plaintiffs state they have not alleged the State was negligent in using "fire protection or firefighting facilities" or that their cattle were killed because the State was negligent in "fighting fires" on their property. Rather, plaintiffs' complaint alleges the State was negligent in not repairing the fence or notifying plaintiffs *after* the fire had been extinguished.

The State contends that section 850.4 was enacted by the Legislature in order that firefighters would not be deterred from taking any action they may desire in combating fires by a fear that liability might be imposed if a jury believes such action to be unreasonable. (Van Alstyne, Cal. Government Tort Liability (Cont. Ed. Bar 1964), § 7.29, pp. 311-312.)

The State relies upon section 850.4 as a defense and especially notes the last sentence which states that there is no liability *"for any injury caused in fighting fires."* (Italics added.) It contends this language creates an absolute immunity and, under the facts of this case, it cannot be denied the fence was cut in order to fight a fire.

The State argues that plaintiffs have misconstrued the purpose of section 821.8 which is set forth in the Law Revision Commission comment: "This section expresses a principle contained in a large number of statutes scattered through the codes providing particular public employees with a similar immunity. The section nullifies the common law rule that a public employee who enters property under authority of law but then commits a negligent or wrongful act is a trespasser ab initio and liable for all damages resulting from his entry."

The State also argues that a careful reading of section 821.8 reveals that it was not intended to circumvent immunities contained elsewhere in the Government Code since the nonexoneration clause is restricted to that particular section.[3]

The State, in relying upon *Heieck and Moran* v. *City of Modesto* (1966) 64 Cal.2d 229 [49 Cal.Rptr. 377, 411 P.2d 105], argues that the inaction here (i.e., repair of fence or failure to warn) is the same kind of nonactivity discussed and discarded in *Heieck*. The State also contends the complaint here cannot be significantly distinguished from plaintiff's

---

[3]The second sentence of section 821.8 reads: *"Nothing in this section* exonerates a public employee from liability for an injury proximately caused by his own negligent or wrongful act or omission [after lawful entry upon property]." (Italics added.)

complaint in *Heieck* since both complaints alleged that a public entity negligently failed to perform remedial acts in connection with firefighting activities.

Finally, the State contends plaintiffs' analogy to a private person entering upon the lands of another is erroneous. Section 196 of the Restatement Second of the Law of Torts, states that: "One is privileged to enter land in the possession of another if it is, or if the actor reasonably believes it to be, necessary for the purposes of averting an imminent public disaster." The comments to section 196 expressly include fire within the privileged entry. Thus, the State contends that a private person who enters upon another's property to prevent the impending public disaster of a fire is under no duty to take remedial action (e.g., repair a hole in the fence through which he entered) after the fire is extinguished. (Cf. *Surocco* v. *Geary* (1853) 3 Cal. 69.)

The Law Revision Commission comment to section 850.4 states: "Section 850.4 provides for absolute immunity from liability for injury caused in fighting fires (other than injuries resulting from operation of motor vehicles) or from failure to properly maintain fire protection equipment or facilities. There are adequate incentives to careful maintenance of fire equipment without imposing tort liability; and firemen should not be deterred from any action they may desire to take in combating fires by a fear that liability might be imposed if a jury believes such action to be unreasonable."

In commenting on *Heieck, supra,* Professor Van Alstyne states: "Without indicating which section [850.2 or 850.4] was applicable, or whether both applied, the court concluded that the legislative intent to provide for immunity on the facts presented was 'inescapable.' This conclusion constitutes a flat rejection of the view taken by the court of appeal (Heieck & Moran v. Modesto [1966] [64 Cal.2d 229]), that the immunities provided in Govt. C 850.2 and 850.4 do not apply because the city had provided adequate fire mains and hydrants, which were in good working condition, but were inoperative because of the negligence of a city employee in shutting off the water supply. This view, while defensible as a literal interpretation of the immunity provisions, was regarded by the supreme court as inconsistent with the more expanded immunity which the legislative history indicated was the basic statutory design." (Van Alstyne, Cal. Government Tort Liability Supp. (Cont. Ed. Bar 1969), § 7.28, pp. 71-72.)

In a recent case the court of appeal (relying in part on *Heieck*) held that section 850.4's absolute governmental immunity applied broadly to any injury caused in the course of fighting fires. (*Heimberger* v. *City of Fairfield* (1975) 44 Cal.App.3d 711 [117 Cal.Rptr. 482]; see also, *Connelly* v. *State of California* (1970) 3 Cal.App.3d 744, 751 [84 Cal.Rptr. 257].) It is uncontroverted that the fence in the instant case was cut as part of a firefighting operation.

In *Heimberger, supra,* the court, in dismissing appellant's appeal, rejected his stated cause of action alleging negligence of firemen in failing to "rescue" him when trapped by a fire in a boarding house. The court determined that the firemen's activities in the "rescue" occurred in the course of a firefighting function and that section 850.4 provided an absolute immunity.

In the instant case however, we consider whether a failure to act subsequent to the cessation of firefighting activities, that is, the failure to close the opening in the fence or to notify plaintiffs of that condition, states a cause of action.

In reaching a decision we note that in *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], the Supreme Court abrogated the doctrine of sovereign immunity. In a companion case, *Lipman* v. *Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224 [11 Cal.Rptr. 97, 359 P.2d 465], the Supreme Court emphasized, however, that public entities still could not be held liable for discretionary actions of their employees. Thereafter the Legislature enacted the California Tort Claims Act in 1963 (Gov. Code, §§ 810-996.6), and in a series of cases the courts wrestled with problems dealing with difficulties arising therefrom.

In *Morgan* v. *County of Yuba* (1964) 230 Cal.App.2d 938 [41 Cal.Rptr. 508], a police officer gratuitously agreed to warn the plaintiff's decedent when a certain prisoner was about to be released, and then failed to do so. The prisoner, upon release, sought out and killed the unsuspecting promisee. The court held, in a wrongful death action, that the officer was not immune.

In *Ne Casek* v. *City of Los Angeles* (1965) 233 Cal.App.2d 131 [43 Cal.Rptr. 294], two prisoners escaping from the custody of police officers, ran into and injured plaintiff who sued the officers for negligently failing to use sufficient force to restrain the prisoners. The court concluded (at

p. 142): "We hold that not only before *Muskopf* and *Lipman,* but also during the 'moratorium' and after the passage of the Act in 1963 it was the law that the officer was immune from civil liability to third persons for damage done by a suspect who has managed to escape, because it would not be in the public interest to make the officer's acts reviewable in civil litigation, even if in a particular case a plaintiff may be able to prove negligence."

In *Sava* v. *Fuller* (1967) 249 Cal.App.2d 281 [57 Cal.Rptr. 312], the court held that a state botanist had exercised discretion in making the decision to analyze a plant substance that a child might have ingested, in order to determine whether or not it was toxic. The botanist incorrectly diagnosed the substance as toxic, and the child was thereafter treated for the ingestion of this plant, rather than for his actual malady—bronchopneumonia. The "subsequent negligence" of the botanist—occurring after he had exercised his discretion—in making a faulty diagnosis of poisoning was held to be actionable.

In *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], plaintiff Ida Mae Johnson and her husband were requested by the Youth Authority to provide a foster home for a young juvenile. Five days after he was placed in the Johnson home, the boy attacked the plaintiff with a butcher knife while she was asleep. Mrs. Johnson alleged that the Youth Authority had failed to warn her and her husband of the boy's known homicidal tendencies.

The issue, as framed by the court of appeal, was whether or not the negligent failure to inform plaintiff of the boy's tendencies comes within the immunity for discretionary acts or omissions granted by section 820.2 of the Government Code. The appellate court answered this question in the affirmative, holding that both the placement of the boy with the family and the decision whether or not to warn were discretionary. The Supreme Court reversed, holding that certain policy factors are to be weighed in determining whether immunity should be granted in a particular case and holding that the State must initially demonstrate that discretion has in fact been exercised before immunity will attach. (*Id.,* at pp. 794-795.) Johnson requires the governmental entity or employee to demonstrate that a considered decision actually took place, stating (at pp. 794-795, fn. 8): "Accordingly, to be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place. The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision."

I would hold that here the State must affirmatively prove that discretion was exercised in fact. The public employee had the authority to cut the fence and enter the property for the purpose of fighting the fire and in doing so performed a discretionary act. However, the act here complained of, that of failing either to close the fence or give notice of its then condition took place after firefighting activities had come to an end. The damage resulted from a negligent failure to act. Thus the State must demonstrate that a considered decision took place that allowed the fence to remain in the condition which resulted in the damage complained of. It was error then for the trial court to sustain the defendant State's demurrer and to order dismissal of plaintiffs' complaint.

I would reverse the judgment.

Appellants' petition for a hearing by the Supreme Court was denied November 25, 1975. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.