[Civ. No. 46031. Second Dist., Div. Five. Dec. 2, 1976.]

MICHAEL HENRY FORDE, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendants and Respondents.

478

## Counsel

Kenneth L. Knapp, Edward L. Lascher and Wendy C. Wilner for Plaintiff and Appellant.

Bonne, Jones & Bridges, Kenneth N. Mueller, Ellis J. Horvitz and Arthur E. Schwimmer for Defendants and Respondents.

## Opinion

**KAUS, P. J.**—Plaintiff Michael Henry Forde appeals from a summary judgment in favor of defendant County of Los Angeles and 11 individual defendants—physicians and a nurse employed by the County.

### Facts

The undisputed facts are based on the statement appearing in plaintiff's opening brief. Plaintiff was admitted to Los Angeles County Hospital on August 29, 1971, suffering an acute psychotic reaction. The admitting doctor, a defendant, decided that plaintiff was a danger to himself and others and that he was gravely disabled and possibly suicidal. Plaintiff was examined the next morning by a staff psychiatrist, another defendant, who noted defendant's psychotic reaction. This psychiatrist later transferred plaintiff from the closed ward to which he was first admitted to an open ward where doors were usually kept unlocked. At this point, plaintiff's commitment, originally involuntary, became voluntary.

On September 6, 1971, plaintiff was still a patient at county hospital. That day, Labor Day, plaintiff was permitted to go to a dance for the patients. At 11:40 a.m., it was noted that plaintiff had disappeared from the dance. A nurse, another defendant, reported to the nursing office that a patient had "eloped," called the security guard and described plaintiff. She notified a psychiatric resident, another defendant, who gave instructions that plaintiff was to be given an extended pass until the next morning.

Within a few hours after "eloping," plaintiff jumped off the Macy Street bridge, suffering the injuries which gave rise to this lawsuit.

## DISCUSSION[1]

■ The trial court properly concluded that defendant county and the individual defendants were immune under Government Code, section 856.2, subdivision (a), which provides as relevant: "Neither a public entity nor a public employee is liable for: . . . (2) An injury to, or the wrongful death of an escaping or escaped person who has been confined for mental illness or addiction."

Plaintiff's contentions that this section does not apply are without merit.

First, plaintiff contends that section 856.2 does not apply because he was a voluntary patient and therefore could not "escape."

Section 856.2, as originally enacted, was "carefully drafted to confine the immunity within narrow boundaries," and applied only to persons who were involuntarily confined. (Van Alstyne, Cal. Government Tort Liability (Cont. Ed. Bar 1964) § 7.49, p. 334.) In 1970, the statute was amended, inter alia, to substitute the word "confined," for the word, "committed." "The substitution of 'confined' for 'committed' makes clear that the immunity covers all persons who are confined for mental illness or addiction, whether or not they are 'committed.' " (Law Rev. Com. comment—1970 amendment.)[2] Thus, contrary to plain-

---

[1] Plaintiff raises several procedural fringe issues, relating to the timing of defendants' motion for summary judgment, the adequacy of the supporting declaration, the propriety of the court's reconsideration of an initial denial of the motion and defendants' failure to plead immunity. These matters are more than adequately refuted in defendants' brief and do not justify detailed discussion in an opinion certified for publication.

[2] Concurrently, the Legislature added section 854.5 which defined the word "confine" to include "admit, commit, place, detain, or hold in custody."

tiff's contention, the immunity conferred by section 856.2 applies whether the mental patient is voluntarily or involuntarily confined.

Plaintiff makes much of the fact that hospital personnel described plaintiff's conduct as an "elopement." Defendants' euphemism does not alter or affect what plaintiff indisputably did. He left the hospital without authorization or without officially signing himself out as a patient. (See Welf. & Inst. Code, § 6005.)

Plaintiff also points out that after his absence was noted, a resident ordered that he be given extended leave. That plaintiff's departure was ratified or covered up does not change the undisputed fact that when he left, he was not authorized to do so.

Second, plaintiff contends that reliance on the "escape immunity here would be absurd," because if plaintiff had attempted suicide by slashing his wrist while at the hospital, there would be no immunity: hence there should be none if he decided to throw himself off a bridge, a method which necessitated a preceding escape.

Leaving aside the question whether there would be liability in plaintiff's hypothetical case, any "absurdity" is a matter for the Legislature which obviously considered a patient within the confines of a hospital more controllable than one who had left it.

Third, plaintiff contends that, at least as to defendant county, he could establish liability under section 855 relating to the failure of the hospital to provide such equipment, personnel or facilities as are mandated by applicable statutes or regulations. Plaintiff, however, does not explain how a theory of liability based on section 855 would avoid the specific immunity of section 856.2. (See *Hayes* v. *State of California*, 11 Cal.3d 469, 471 [113 Cal.Rptr. 599, 521 P.2d 855]; *County of Sacramento* v. *Superior Court*, 8 Cal.3d 479, 485 [105 Cal.Rptr. 374, 503 P.2d 1382].) That the immunity of section 856.2 prevails over the liability created by section 855 was noted in Van Alstyne, California Government Tort Liability (Cont.Ed.Bar 1964) page 649.

Fourth, plaintiff's contention that he falls within the exception to immunity under section 856.2, subdivision (b), is without merit. Subdivision (b) provides that nothing in subdivision (a) "exonerates" a public employee from liability for "injuries inflicted as a result of his own

negligent or wrongful act or omission on an escaping or escaped mental patient in recapturing him." There is no evidence that defendants recaptured plaintiff. His suggestion that section 856.2, subdivision (b)(2), applies to negligence in failing to try to recapture an escaped patient —rather than to negligence resulting in injuries inflicted in the process of recapturing the patient—would, of course, negate the immunity conferred in subdivision (a). (See *Bettencourt* v. *State of California,* 51 Cal.App.3d 892, 894-895 [124 Cal.Rptr. 542].)

Finally, plaintiff points to trial counsel's opposition to the motion for summary judgment, which was, in the main, a collage of parts of depositions showing quite persuasively that it was professional malpractice which resulted in lack of such restraints as would have made his escape impossible; further, plaintiff assures us that further discovery would generate even more evidence of malpractice. That approach, however, merely obscures the issue. Before discussing any immunity, one assumes as a matter of course that there is a basis for liability to which the immunity is relevant.

Defendants' motion for summary judgment was properly granted. The judgment is affirmed.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied December 20, 1976, and appellant's petition for a hearing by the Supreme Court was denied January 27, 1977.