[No. B003383. Second Dist., Div. Three. May 7, 1984.]

LOS ANGELES COUNTY-U.S.C. MEDICAL CENTER et al.,
Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LUCY PEDREGON et al., Real Parties in Interest.

456

COUNSEL

Edwin B. Warren, John H. Bauer, Greines, Martin, Stein & Richland, Irving H. Greines and Kent L. Richland for Petitioners.

No appearance for Respondent.

Stone & Lerner and Marc Lerner for Real Parties in Interest.

OPINION

KLEIN, P. J.—Los Angeles County-U.S.C. Medical Center (County Medical Center) and the Los Angeles County Mental Health Services Evaluation Unit at Norwalk (CEU) petitioned the court for a writ of mandate seeking relief from a denial of its motion for summary judgment against real parties in interest Lucy Pedregon and Henry Pedregon (the Pedregons).

Because we conclude there was no material dispute of fact, the trial court abused its discretion in denying the County Medical Center's motion for a summary judgment, and we therefore grant the petition for writ of mandate.

### PROCEDURAL AND FACTUAL BACKGROUND[1]

On January 24, 1980, Lucy Pedregon (Lucy) was brought to CEU. At that time Dr. Thomas Reed, a physician on the psychiatric staff of CEU, examined Lucy and recorded her complaints and symptoms.

Based on the symptoms and past history of mental illness, Dr. Reed determined there was probable cause to believe Lucy was a danger to herself and gravely disabled. Dr. Reed then completed an "Application for 72-Hour Detention for Evaluation and Treatment" which authorizes a member of the attending staff of an evaluation facility to take a gravely disabled, mentally

---

[1] The facts are gleaned from the pleadings and briefs on appeal.

disordered person into custody and place the person in an approved facility for 72-hour treatment and evaluation.

That same evening while still on the 72-hour hold, Lucy was transferred from CEU to the County Medical Center for a medical workup including X-rays and an electrocardiogram. CEU did not have the equipment to perform the necessary tests. Upon arrival at County Medical Center, Lucy had a physical examination and was awaiting X-rays and the electrocardiogram. At approximately 8 p.m., it was determined that Lucy was missing. Shortly after midnight, Lucy was found and returned to the County Medical Center after having jumped from a nearby freeway overpass.

On or about July 15, 1981, the Pedregons filed a second amended complaint against the County Medical Center and the CEU alleging that the CEU had diagnosed Lucy as suffering from mental illness and that thereafter, "without releasing plaintiff Lucy Pedregon from confinement," she was negligently placed "in an unrestrained environment" at County Medical Center and as result of this alleged negligence, she suffered personal injuries and pain and suffering.

The County Medical Center filed an answer, engaged in discovery, and filed a motion for summary judgment in September 12, 1983, on the ground that Government Code section 856.2 (section 856.2) immunizes public entities from injuries to escaped persons confined for mental illness.

The motion for summary judgment was heard and denied on December 7, 1983, with the holding that there was a "triable issue of material fact whether plaintiff was *confined* when she left the County facility." (Italics added.)

The County Medical Center petitioned this court, which on February 6, 1984, issued an alternative writ directing the trial court either to vacate its December 7, 1983, order or to show cause why it should not do so. The trial court declined to vacate its order.

### Discussion

1. *When summary judgment proper.*

■ Summary judgment is proper when affidavits in support of the moving party would be sufficient to sustain a judgment in that party's favor and the opponent does not by affidavits show facts that may be deemed sufficient to present a triable issue. (*Nicewarner* v. *Kaiser Steel Corp.* (1983) 143

Cal.App.3d 31, 35 [191 Cal.Rptr. 522].) ■ Although the court makes the determination concerning triable issues by examining the papers in support of and in opposition to the motion, *it may also draw reasonable inferences from the facts before it.* (*Saatzer* v. *Smith* (1981) 122 Cal.App.3d 512, 517 [176 Cal.Rptr. 68].)

■ A defendant, such as County Medical Center, when moving for summary judgment "must conclusively negate a necessary element of the plaintiff's case or establish a complete defense and thereby demonstrate that under no hypothesis is there a material factual issue which requires the process of a trial." (*Ibid.*) ■ The party opposing the summary judgment, which is supported by declarations or affidavits sufficient to sustain the motion, has the burden of showing that triable issues of fact do exist. (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 873 [127 Cal.Rptr. 110, 544 P.2d 1310].) If that burden is not sustained, summary judgment is proper. (*Saatzer* v. *Smith, supra,* 122 Cal.App.2d at p. 517.)

2. *A writ of mandate is a proper remedy to correct an abuse of discretion by the trial court in denying a motion for summary judgment.*

■ While the granting of a motion for summary judgment followed by the entry of the judgment in favor of the moving party is appealable, an order denying summary judgment is a nonappealable order. (4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, §§ 195, 196, p. 2842; *Bank of America* v. *Superior Court* (1970) 4 Cal.App.3d 435, 440-441 [84 Cal.Rptr. 421].)

■ A writ of mandate is the proper remedy to compel a trial court to grant a motion for a summary judgment when a petitioner alleges that no plain, speedy and adequate remedy at law is available, and that the denial was an *abuse of discretion by the trial court.* (*Bank of America* v. *Superior Court, supra,* 4 Cal.App.3d at pp. 441-442.)

On such a showing, this court, in its discretion, may properly grant the petition for the writ of mandate. (*Sierra Breeze* v. *Superior Court* (1978) 86 Cal.App.3d 102, 104, fn. 2 [149 Cal.Rptr. 914].)

3. *Lucy was on a 72-hour hold at the time of her arrival at the County Medical Center.*

Lucy was properly detained at the CEU on a 72-hour hold pursuant to Welfare and Institutions Code section 5150.[2] When it was determined that

---

[2]Welfare and Institutions Code section 5150 states in pertinent part: "When any person, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely

Lucy needed sophisticated medical tests that the CEU could not provide, she was temporarily transferred to the County Medical Center for this purpose.

The Pedregons concede in their complaint that Lucy was "confined" by the CEU and by the County Medical Center and allege that "*without releasing Lucy Pedregon from confinement,* [the County Medical Center] negligently placed plaintiff Lucy Pedregon in an unrestrained environment at defendant Los Angeles County-USC Medical Center." ██ Any admissions found in the pleadings may be considered by the court and are binding on the plaintiff. (*Thierfeldt* v. *Marin Hosp. Dist.* (1973) 35 Cal.App.3d 186, 193 [110 Cal.Rptr. 791].)

Here, there is no factual dispute that Lucy was still on the 72-hour psychiatric hold while she was at the County Medical Center.

4. ██ *Lucy's detention on a 72-hour hold constituted "confinement" within the meaning of section 856.2.*

Section 856.2 states in pertinent part: "(a) Neither a public entity nor a public employee is liable for: [¶] . . . . [¶] (2) An injury to, or the wrongful death of, an escaping or escaped person who has been *confined* for mental illness or addiction." (Italics added.)

In 1970, section 856.2 was amended in a manner of particular significance here. ██ The Law Revision Commission comment on the 1970 amendment immediately following section 856.2 states: "Formerly, Section 856.2 covered only persons who had been 'committed' for mental illness or addiction. The substitution of 'confined' for 'committed' makes clear that the immunity covers all persons who are confined for mental illness or addiction, whether or not they are 'committed.'" Therefore, the substitution of the word "confined" enlarged the scope of the immunity to include a person voluntarily admitted or *temporarily detained.* (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 4.51, p. 406; *Forde* v. *County of Los Angeles* (1976) 64 Cal.App.3d 477, 479-480 [134 Cal.Rptr. 549].)

disabled, a peace officer, member of the attending staff, as defined by regulation, of an evaluation facility designated by the county, designated members of a mobile crisis team provided by Section 5651.7, or other professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Mental Health as a facility for 72-hour treatment and evaluation."

Government Code section 854.5 (section 854.5) was added in 1970 and states: "As used in this chapter, 'confine' includes admit, commit, place, detain, *or* hold in custody." (Italics added.) The Law Revision Commission comment immediately following explained: "Section 854.5 has been added to make clear that sections 856 and 856.2 apply to all cases within the rationale of those sections."

 The Pedregons contend that whether Lucy was "confined" pursuant to the immunity statute is a disputed issue of fact because a person to be "confined" within the meaning of section 856.2 must invariably have been "in custody which the plaintiffs contend to be in some sort of physical restraint." We disagree.

The Pedregons are interpreting the statute to define confinement as "held in custody." They purport to rely on the "rule of statutory construction that where several words are followed by a phrase that is applicable as much to the first and other words as to be last, the natural construction of the language demands that the clause be read as applicable to all." They argue that clearly the first few words in section 854.5 are modified by "in custody."

 The Pedregons' questionable interpretation of "in custody" can be disregarded by relying on the general rule that " ' "modifying phrases are to be applied to the words immediately preceding them and are not to be construed as extending to more remote phrases." ' " (*People* v. *Corey* (1978) 21 Cal.3d 738, 742 [147 Cal.Rptr. 639, 581 P.2d 644].) However, a more basic rule is applicable.

 Section 854.5 defines "confine" in the disjunctive—"admit, commit, place, detain *or* hold in custody." In its ordinary sense, the word "or" indicates an alternative such as "either this or that." (*Handeland* v. *Department of Real Estate* (1976) 58 Cal.App.3d 513, 517 [129 Cal.Rptr. 810]; *Houge* v. *Ford* (1955) 44 Cal.2d 706, 712 [285 P.2d 257].) The words in section 854.5 are therefore an *alternative to* each other.

The more reasonable interpretation requires the conclusion that a person on a 72-hour psychiatric hold is "confined" for purposes of section 856.2.

5. *Negligence in restraining a patient on a 72-hour hold does not serve to vitiate the escape immunity of section 856.2.*

As discussed *ante,* the Pedregons argue that because Lucy was not "held in custody," she was not confined. Specifically, their opposition to the summary judgment claims that Lucy "was not confined and therefore could not

escape within the meaning of section 856.2'' because she "was left unattended and could have exited from a number of places in the hospital.''

In apparent agreement with this position the trial court stated, "[t]he court cannot say as a matter of law that Mrs. Pedregon was 'confined' within the meaning of Gov. C. § 856.2(a)(2) when she wandered out of the corridor and out of the hospital.''

The Pedregons rely on *McDowell v. County of Alameda* (1979) 88 Cal.App.3d 321 [151 Cal.Rptr. 779] in support of this position. In *McDowell*, authorized county employees determined that one Gregory Jones was a danger to himself and others. After ascertaining that Jones had medical insurance at a Kaiser Hospital, rather than "confine" him at the county facility, the county employees sent him by taxicab to Kaiser. (*Id.*, at pp. 324-327.) Jones never arrived at Kaiser Hospital and two days later, shot and killed plaintiff's decedent. (*Id.*, at p. 324.) Both parties agreed that Jones was never "confined.''

The trial and appellate courts held that the county's act of sending Jones to Kaiser by public transportation constituted a *decision* not to "confine" him and therefore the county was immune under Government Code section 856, which grants public entities immunity from liability for injury resulting from a *decision* whether to confine a mentally ill person. (*Id.*, at p. 327.)

Unlike the patient in *McDowell* who was admittedly not confined, Lucy was confined under the 72-hour hold, and was *not* released when she was temporarily transported to the County Medical Center for necessary medical services.

The Pedregons' position confuses the issue of negligence with the immunity issue. The contention that negligent failure to *adequately* confine a mental patient would negate the escape immunity in section 856.2 was rejected in *Forde v. County of Los Angeles, supra,* 64 Cal.App.3d 477.

In *Forde*, a mentally ill patient was admitted to the Los Angeles County Hospital "suffering acute psychotic reaction." Thereafter he was transferred to an open ward where doors were usually left unlocked. (*Id.*, at p. 478.) While attending a dance at the hospital for patients, he disappeared. A few hours later, he jumped off a nearby bridge, suffering injuries which formed the basis of the lawsuit against the county. (*Id.*, at p. 479.) The trial court granted summary judgment holding that section 856.2 escape immunity applied. The ruling was affirmed on appeal. (*Id.*, at pp. 479-481.)

Taking note of depositions setting forth "that it was professional mal-practice which resulted in lack of such restraints as would have made his escape impossible," the *Forde* court expressly rejected the argument that the alleged negligence vitiated immunity by reasoning that "*that approach, . . ., merely obscures the issue. Before discussing any immunity, one assumes as a matter of course that there is a basis for liability to which the immunity is relevant.*" (Italics added; *id.*, at p. 481.)[3]

The Pedregons' position appears indistinguishable from the argument already rejected in *Forde* to the effect that section 856.2 escape immunity is vitiated by alleged carelessness in the means of confinement. If the Pedregons were correct, the plaintiff in *Forde* could not have been considered "confined" since the doors of his open ward were unlocked and he could leave at any time. *Forde* established that "confinement" for the purpose of section 856.2 turns on the person's *status* as a patient "confined" for mental illness, not whether physical restraints were imposed.

6. *Section 856.2 immunity applies to an escape from confinement at the County Medical Center.*

The Pedregons additionally make the argument that "the immunity under section 856.2 applies only to persons escaping from a 'licensed health care facility providing mental health care services.'"

Nothing in section 856.2 either expressly or by implication limits escape immunity to escapes only from a licensed mental health facility.

The point is not whether Lucy was being confined pursuant to a 72-hour hold in an unauthorized facility and escaped, but whether her escape from the County Medical Center to which she had been temporarily transferred while still confined is covered by section 856.2. The mere fact that at the precise moment she escaped she was in a location within the County Medical Center housing medical testing equipment and not "in custody" in the psychiatric ward at the huge and complex county facility, does not a fortiori rule out escape immunity. The section clearly states public entities and employees are not liable for injury to an escaped person who has been confined for mental illness.

---

[3]This approach is consistent with the Supreme Court's view that duty of care (here negligence) is a distinct concept from that of statutory immunity. (Cf. *Williams* v. *State of California* (1983) 34 Cal.3d 18, 22 [192 Cal.Rptr. 233, 664 P.2d 137]; *Davidson* v. *City of Westminister* (1982) 32 Cal.3d 197, 201-202 [185 Cal.Rptr. 252, 649 P.2d 894].)

## CONCLUSION

Under these circumstances, we conclude that as a matter of law, no material issue of fact remains.

## DISPOSITION

Let a peremptory writ of mandate issue, directing the respondent court to vacate its order of December 7, 1983, denying petitioners' motion for summary judgment and enter a new and different order granting petitioners' motion for summary judgment.

Lui, J., and Danielson, J., concurred.

The petition of real parties in interest for a hearing by the Supreme Court was denied June 28, 1984. Bird, C. J., was of the opinion that the petition should be granted.