[No. B106201 Second Dist., Div. Three. Dec. 5, 1997.]

JAMES PIEPER et al., Plaintiffs, Cross-defendants and Appellants, v. COMMERCIAL UNDERWRITERS INSURANCE COMPANY, Defendant, Cross-complainant and Respondent.

1010

COUNSEL

Berger & Norton, Michael M. Berger and Jacqueline A. Axtell for Plaintiffs, Cross-defendants and Appellants.

Soltman, Sedley & O'Meara and Steven B. Soltman for Defendant, Cross-complainant and Respondent.

OPINION

ALDRICH, J.—

INTRODUCTION

Plaintiffs, cross-defendants, and appellants James Pieper and Jeanne Ellen Pieper (the Piepers) appeal from judgment entered in favor of defendant, cross-complainant and respondent Commercial Underwriters Insurance Company (CUI).

The action arose from the Old Topanga Canyon fire, which destroyed the Piepers' collection of rare ceremonial masks. The Piepers filed a claim with CUI under their "all risks" policy. CUI denied coverage pursuant to a "brush fire" exclusion. The Piepers filed an action for breach of insurance contract and for bad faith contending that their loss was caused by the covered peril of arson. CUI cross-complained for declaratory relief contending the brush fire exclusion applied. The Piepers and CUI each brought motions for summary judgment. The trial court granted CUI's motion and denied the Piepers' motion, finding that the brush fire exclusion precluded recovery under the all risks policy.

The coverage issue raised by this appeal is whether the fire, which was caused by arson, was a covered risk or an excluded risk under the brush fire exclusion clause of the Piepers' policy.

We find the exclusion clause was unambiguous and that the Old Topanga Canyon fire was a brush fire within the exclusion clause as a matter of law.

There are no triable issues regarding the proximate and efficient cause of the fire as set forth in *Sabella* v. *Wisler* (1963) 59 Cal.2d 21 [27 Cal.Rptr. 689, 377 P.2d 889], as the sole cause of the Piepers' loss was the brush fire, not arson.

Judgment is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

In May 1993, CUI issued the Piepers an all risks policy of insurance in the amount of $662,005 for their fine arts collection located in the Piepers' home in Malibu. The Piepers owned one of the world's rarest collections of ceremonial masks from Guatemala and Mexico and from the Pueblo Indians of the Southwest United States.

On November 2, 1993, during the policy period, a significant portion of the fine arts collection was destroyed in a fire which burned down the Piepers' home. The fire began at the top of Old Topanga Canyon Road and swept over seven miles towards the Pacific Ocean, destroying the Piepers' home in its path.

On November 3, 1993, the Piepers made a claim under the CUI policy for their loss. The scheduled value of the lost ceremonial masks and other art objects was $472,555. CUI denied the Piepers' claim on the basis that a "brush fire" exclusion applied.[1]

In their motion for summary judgment on CUI's cross-complaint, the Piepers presented evidence that the fire which destroyed the fine arts collection was an arson fire and contended that the brush fire exclusion was not enforceable because it attempts to evade the efficient proximate cause rule codified in Insurance Code section 530[2] and improperly shift the burden of proof to the insureds. Under *Sabella* v. *Wisler, supra,* 59 Cal.2d 21, and its progeny, whenever a loss is caused by a combination of covered and specifically excluded risks, the loss is covered if the covered risk is the efficient proximate cause of the loss.

---

[1]The "FINE ARTS BRUSH FIRE EXCLUSION ENDORSEMENT" states, "This policy does not cover loss or damage to property *directly or indirectly occasioned by, happening through or in consequence of brush fire* and any claim, any [*sic.*] in any action, suit or proceeding to enforce a claim for loss or damage under this policy, the burden of proving that the loss or damage does not fall within the exclusion shall be upon the insured."

[2]Insurance Code section 530 provides: "An insurer is liable for a loss of which a peril insured against was the proximate cause, although a peril not contemplated by the contract may have been a remote cause of the loss; but he is not liable for a loss of which the peril insured against was only a remote cause."

Geoffrey M. Schroeder, a retired task force commander with the Los Angeles City Fire Department, and captain of the arson section for about two years, declared that the Old Topanga Canyon fire was an arson fire. After a thorough investigation, the Los Angeles County Fire Department concluded that the fire was arson. Schroeder reviewed the county's investigation reports, and performed his own independent investigation of the source and origin of the Old Topanga Canyon fire. His investigation confirmed the conclusions of the county fire department that the fire was set by an arsonist or arsonists. Schroeder also concluded that the Piepers implemented and maintained an excellent brush management program, their home being cleared of brush for 200 feet, and that the fire which consumed the Piepers' home did not spread through brush to their home because all brush was cleared from around it.

The Piepers also presented the deposition testimony of Howard Mitchell of CUI who stated that the loss would be covered if the brush fire exclusion was not part of the Piepers' policy.

CUI opposed the Piepers' motion, asserting that the November 2, 1993, fire was "commonly referred to as a brush fire regardless of its origin." Robert E. Lowe, a former fire investigator for the Los Angeles City Fire Department and now a private investigator declared, "Based on, among other things, the [county investigation] reports, my fifty (50) years of experience in the fire service, and my personal familiarity with the Santa Monica Mountains including specifically the area consumed by the Fire, the Fire is a brush fire." Lowe defined a brush fire as ". . . includ[ing] any fire that burns through a predominately chaparral area, such as that found in the Santa Monica Mountains. The presence of houses and non-indigenous landscaping, including trees and grasses, as well as the presence of some natural trees does not change the categorization of the Fire as a brush fire. [¶] . . . In other words, the Fire is a brush fire irrespective of whether it was started by arson, lightning, or a plane crash."

Randall B. Cohl, the fire captain for the Kern County Fire Department, was part of the strike team dispatched to suppress the Old Topanga Canyon fire. Cohl declared, "Based on my investigation and knowledge of the field, the Old Topanga Road Fire is commonly called a brush fire. There is really no other terminology that would adequately describe the Old Topanga Canyon Road Fire because it burned through an area that is overwhelmingly dominated by chaparral, a type of brush. A fire is commonly referred to by the primary type of vegetation it consumes and is typically called a grass fire, a timber or forest fire, or a brush fire. This fire could not be characterized as a grass fire or a timber fire based on the predominant vegetation. . . . [¶] A fire is a brush fire if it burns an area dominated by certain

types of vegetation, such as chaparral in this case, and this is not unaffected [*sic*] by how the fire is started. . . ." Cohl concluded that the cause of the fire "is very inconclusive."

Helene J. Briskin, underwriting manager at Howard James insurance agency, declared that the Piepers' policies, at least since 1988, included the brush fire exclusion. In underwriting a policy, she consults an "Admap," a map that delineates areas according to brush fire risk, commonly used by insurers. The Piepers' residence was located in an area designated as a brush fire high-risk area. Briskin declared, "The intent of the Brush Fire Exclusion is to exclude from coverage all losses that are caused directly or indirectly by any fire that travels through and is fueled by the natural vegetation existing in a designated brush fire area; i.e. 'brush fires.' "

CUI also presented the deposition testimony of the Piepers indicating they were aware of the brush fire exclusion, they attempted to obtain insurance for their fine art items that did not have a brush fire exclusion but could not, and that they doubled their content insurance on their residence.

CUI's motion for summary judgment was premised on the same theory as its opposition to the Piepers' summary judgment motion: that the fire was a brush fire and the brush fire exclusion applied. CUI also contended that its denial of the Piepers' claim was reasonable and in good faith.

The Piepers opposed CUI's motion, citing, among other things, the deposition testimony of Howard Mitchell of CUI that there was no investigation of the cause of the Old Topanga Canyon fire prior to denial of the Piepers' claim.

The trial court denied the Piepers' motion and granted CUI's motion. The trial court found the term "brush fire" was clear and unambiguous and "[t]o interpret the brush fire exclusion as being against public policy would result in a 'windfall' to residents (such as [the Piepers]) who live in brush fire areas such as the Malibu hills . . . and a concomitant increase in premiums for residents who live in non brush fire areas." The trial court held that this was not a case of concurrent or multiple causation as premised in *Sabella*. Based on the "undisputed fact" that the fire burned seven miles through chaparral before it caused the destruction of the Piepers' art collection, the trial court found the cause "irrelevant." The trial court found no triable issue as to whether the fire was a "brush fire," stating "Without being facetious, 'if it looks like a duck, walks like a duck and quacks like a duck, it's a duck'—not a platypus." The clause shifting the burden of proof, whether or not against public policy, was found to be severable.

The Piepers appeal from the judgment subsequently entered in favor of CUI.

## ISSUES

Is the brush fire exclusion clause enforceable? And if so, are there triable issues of fact regarding the applicability of the brush fire exclusion clause to the Piepers' claim, such as whether the Old Topanga Canyon fire was a "brush fire" under the terms of the policy and whether the efficient proximate cause of the loss was the covered peril of arson or the excluded peril of brush fire?

## DISCUSSION

1. *Standard of review.*

"Summary judgment properly is granted if there is no question of fact and the issues raised by the pleadings may be decided as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Mars* v. *Wedbush Morgan Securities, Inc.* (1991) 231 Cal.App.3d 1608, 1613. . . .) Inasmuch as summary judgment is a drastic procedure and should be used with caution (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35 . . .), the moving party's papers are strictly construed, while the opposing party's papers are liberally construed (*Mars, supra,* at p. 1613; accord, *Pekarek* v. *City of San Diego* (1994) 30 Cal.App.4th 909, 912. . .).

". . . . . . . . . . . . . . . . . . . . . . . . .

"The moving defendant bears the burden of proving the absence of any triable issue of material fact, even though the burden of proof as to a particular issue may be on the plaintiff at trial. (*Los Angeles County-U.S.C. Medical Center* v. *Superior Court* (1984) 155 Cal.App.3d 454, 459 . . . .) . . . Once the moving party has met its burden, the opposing party bears the burden of presenting evidence that there is a triable issue of fact as to any essential element of a cause of action. (*Hunter* v. *Pacific Mechanical Corp.* (1995) 37 Cal.App.4th 1282, 1286 . . . .)

"The court must consider presumptions and draw inferences from the facts adduced where the inference is the only reasonable one which may be drawn. (See *Unjian* v. *Berman* (1989) 208 Cal.App.3d 881, 884 . . . , review den. May 23, 1989; *Hooks* v. *Southern Cal. Permanente Medical Group* (1980) 107 Cal.App.3d 435, 441 . . . ; *Hirsch* v. *Blish* (1977) 76 Cal.App.3d 163, 166 . . . .) The court has no power in a summary proceeding to weigh one inference against another or against other evidence, however. (*Unjian, supra,* at p. 884; *Brown* v. *City of Fremont* (1977) 75 Cal.App.3d 141, 145 . . . .) . . .

■ "In determining the propriety of a summary judgment, the reviewing court is limited to facts shown by the evidentiary materials submitted, as well as those admitted and uncontested in the pleadings. (*Sacks* v. *FSR Brokerage, Inc.* (1992) 7 Cal.App.4th 950, 962 . . . ; *McDaniel* v. *Sunset Manor Co.* (1990) 220 Cal.App.3d 1, 5 . . . .) The trial court must consider *all* evidence set forth in the parties' papers, and summary judgment is to be granted if *all* the papers submitted show there is no triable issue of material fact in the action, thereby entitling the moving party to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) On appeal, this court exercises its independent judgment in determining whether there are no triable issues of material fact and the moving party thus is entitled to judgment as a matter of law. (*Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573, 579 . . . ; *Torres* v. *Cool Carriers A.B.* (1994) 26 Cal.App.4th 900, 904 . . . .)" (*Sanchez* v. *Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1464-1466 [55 Cal.Rptr.2d 415], original italics.)

2. *Interpretation of the brush fire exclusion.*

■ Generally, the interpretation of an insurance policy is a question of law. (*Merced Mutual Ins. Co.* v. *Mendez* (1989) 213 Cal.App.3d 41, 45 [261 Cal.Rptr. 273].) Parol evidence is admissible to aid in the interpretation of coverage provisions but it cannot change the "plain meaning" of words used in the policy. (*Garcia* v. *Truck Ins. Exchange* (1984) 36 Cal.3d 426, 435 [204 Cal.Rptr. 435, 682 P.2d 1100].)

■ "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. [Citation.] Such intent is to be inferred, if possible, solely from the written provisions of the contract. ([Civ. Code,] § 1636.) The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' (*id.* § 1644), controls judicial interpretation. [Citation.]" (*AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 821-822 [274 Cal.Rptr. 820, 799 P.2d 1253].)

The test is what a reasonable person in the position of an insured would have understood the words to mean. (*Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089].) "Moreover, exclusionary clauses are interpreted narrowly, whereas clauses identifying coverage are interpreted broadly. [Citation.]" (*Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 406 [257 Cal.Rptr. 292, 770 P.2d 704].)

The term "brush fire" was not defined in the policy.

■ "If there is ambiguity, however, it is resolved by interpreting the ambiguous provisions in the sense the promisor (i.e., the insurer) believed the promisee understood them at the time of formation. (Civ. Code, § 1649.) If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist. (*Id.*, § 1654.) In the insurance context, we generally resolve ambiguities in favor of coverage. [Citations.] Similarly, we generally interpret the coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured. [Citations.]" (*AIU Ins. Co.* v. *Superior Court, supra,* 51 Cal.3d at p. 822, fn. omitted.)

The use of the term "brush fire" in the Piepers' all-risk policy is clear and unambiguous under the circumstances of this particular transaction.[3] The Piepers presented the opinion evidence that the Old Topanga Canyon fire should not be classified as a brush fire, while CUI presented the contrary view. In a sense, none of this evidence is relevant to the interpretation of the policy, as the objective reasonable interpretation of the insured would not depend on the views of so-called experts except to the extent these views represent the popular or common understanding of the term. There is evidence that underwriters require the policies for property within a certain area including the high-risk area of the Piepers' residence to include the brush fire exclusion. This practice reflects the intention of the insurer to exclude the risk, a risk well known to residents in the area of Malibu. A reasonable person in the position of the Piepers would have understood the terms as used to exclude coverage for all damage resulting from a brush fire such as the Old Topanga Canyon fire.

Furthermore, it is clear that the Piepers understood the term "brush fire" was used to exclude coverage for all damage resulting from a brush fire such as the Old Topanga Canyon fire. They both testified during deposition that, prior to sustaining the loss, they were aware that the policy contained the brush fire exclusion and understood that it operated to exclude from coverage losses caused by brush fires. Furthermore, Jeanne Pieper testified that prior to the loss she realized that fire was the number one risk of loss to their residence and that she considered the brush fire exclusion to be a problem. Prior to the loss the Piepers attempted to obtain a fine arts insurance policy

[3]The American Heritage Dictionary (1981) page 171, defines "brush fire" as "a fire in low growing, scrubby trees and brush." Merriam-Webster's Collegiate Dictionary (10th ed. 1995) page 147, defines it as "a fire involving brush but not full-sized trees." Random House Dictionary (1971) page 191, defines it as "a fire in an area of bushes, shrubs, or brush, as distinct from a forest fire." Webster's Third New International Dictionary (1971) page 286, defines "brush fire" as "a fire involving scrub trees, brush, or other growth that is heavier than grass but not of full tree size." In a figurative sense, a brush fire is defined as something limited in scope or in area, such as border wars. (*Ibid.*)

that did not contain the brush fire exclusion but were unsuccessful. Appellants could not find separate coverage for their fine art items that did not contain a brush fire exclusion and they doubled their content insurance through their State Farm Insurance Policy and were advised by their insurance agent to increase their coverage under the California Fair Plan as well. And, had the Piepers been able to locate a fine arts policy without the brush fire exclusion it would have been at a substantially higher premium.

### 3. *No triable issues of material facts.*

 The trial court properly found that the Old Topanga Canyon fire was a "brush fire" as that term is used in the exclusionary provision of the all risks policy. In explaining its conclusion, the trial court stated: "The term 'brush fire' is clear and would be clear to a lay person and a policy holder," citing the declarations of defendants' experts and the underwriter.[4] There is no dispute that the fire consumed brush and in part was spread by brush.[5]

### 4. *The efficient proximate cause doctrine.*

The Piepers contend the brush fire exclusion clause violates the efficient proximate cause rule for concurrent or multiple causation cases set forth in *Sabella* v. *Wisler, supra,* 59 Cal.2d 21 *(Sabella)* and affirmed in *Garvey* v. *State Farm Fire & Casualty Co., supra,* 48 Cal.3d 395 *(Garvey)* and *State Farm Fire & Casualty Co.* v. *Von Der Lieth* (1991) 54 Cal.3d 1123, 1131 [2 Cal.Rptr.2d 183, 820 P.2d 285, 30 A.L.R.5th 786] *(Von Der Lieth).*

 As explained in *Von Der Lieth,* "[T]he scope of coverage under an all-risk homeowner's policy includes all risks except those specifically excluded by the policy. When a loss is caused by a combination of a covered and specifically excluded risks, the loss is covered if the covered risk was the efficient proximate cause of the loss. . . . [T]he question of what caused the loss is generally a question of fact, and the loss is not covered if the covered risk was only a remote cause of the loss, or the excluded risk was

---

[4]The trial court stated: "Without being facetious, 'if it looks like a duck, walks like a duck and quacks like a duck, it's a duck'—not a platypus."

[5]The trial court (assuming arguendo that this was a case of multiple causation) also resolved the issue regarding the efficient proximate cause of the Piepers' loss finding that the efficient proximate cause was the brush fire (i.e., the Old Topanga Canyon fire) "as a matter of law," relying on the fact that the fire was not started near the Piepers' residence but traveled seven miles "through chaparral" before destroying the art works.

the efficient proximate, or predominate cause." (54 Cal.3d at pp. 1131-1132.) "[I]f third party negligence is not excluded under such a policy, it is a covered peril."[6] (54 Cal.3d at p. 1132.)

In *Garvey, supra,* 48 Cal.3d 395, the court clarified application of the *Sabella* rule. The all risks homeowners policy at issue excluded losses caused by earth movement, including earthquake, and losses caused by settling. The insureds claimed the damage to their home when an addition began to pull away from the main structure and damage to their deck and garden wall were due to negligent construction which was not specifically excluded. The court reversed a directed verdict in favor of the plaintiffs, remanding for a jury determination on the issue of efficient proximate cause. "Coverage should be determined by a jury under an efficient proximate cause analysis." (*Id.* at p. 412.) "*Sabella* defined 'efficient proximate cause' alternatively as the 'one that sets others in motion' (59 Cal.2d at p. 31), and as 'the predominating or moving efficient cause.' (*Id.* at p. 32.) We use the term 'efficient proximate cause' (meaning predominating cause) when referring to the *Sabella* analysis because we believe the phrase 'moving cause' can be misconstrued to deny coverage erroneously, particularly when it is understood literally to mean the 'triggering' cause. . . ." (*Id.* at p. 403.)

In *Von Der Lieth, supra,* 54 Cal.3d 1123, the California Supreme Court held the damage to the insureds' property affected by an incipient landslide was covered, because third party negligence, a covered risk, was the efficient proximate cause of the loss. The all risks policy excluded coverage for loss caused by settling resulting *directly or indirectly* from earth movement and

---

[6]In *Sabella, supra,* 59 Cal.2d 21 the insureds' home settled to uneven elevations and its foundations and walls cracked. The "all physical loss" policy upon the Sabellas' home excluded coverage for loss by settling. Nevertheless, the court held there was coverage, as the efficient proximate cause of the insureds' loss was the rupture of the sewer line causing water to infiltrate the unstable earth below the foundation. Citing Insurance Code section 530, the *Sabella* court expressly rejected defendants' argument based on Insurance Code section 532, that an insurer would be exempt where an excepted peril operated to any extent in the chain of causation so that the resulting harm would not have occurred "but for" the excepted peril's operation. Section 530 provides: "An insurer is liable for a loss of which a peril insured against was the proximate cause, although a peril not contemplated by the contract may have been a remote cause of the loss; but he is not liable for a loss of which the peril insured against was only a remote cause."

Insurance Code section 532 provides: "If a peril is specially excepted in a contract of insurance and there is a loss which would not have occurred but for such peril, such loss is thereby excepted even though the immediate cause of the loss was a peril which was not excepted."

The Supreme Court said, " '[I]n determining whether a loss is within an exception in a policy, where there is a concurrence of different causes, the efficient cause—the one that sets others in motion—is the cause to which the loss is to be attributed, though the other causes may follow it, and operate more immediately in producing the disaster.' " (*Sabella, supra,* 59 Cal.2d at pp. 31-32, quoting from 6 Couch, Insurance (1930) § 1466.)

water damage. The court identified several causes of the loss, including earth movement caused by rising groundwater levels, and negligence of certain entities and parties in failing to take proper measures to preserve the mesa. (*Id.* at p. 1132.) The court explained that the third party negligence was not a remote cause of the loss but a covered risk under an all risks homeowners policy if not excluded. (*Id.* at pp. 1131-1132; see also *Brian Chuchua's Jeep, Inc.* v. *Farmers Ins. Group* (1992) 10 Cal.App.4th 1579 [13 Cal.Rptr.2d 444] [excluded risk of leaking underground storage tank caused by covered risk of earthquake, loss is covered].)

For the efficient proximate cause theory to apply, however, there must be two separate or distinct perils which "could each, under some circumstances, have occurred independently of the other and caused damage." (*Finn* v. *Continental Ins. Co.* (1990) 218 Cal.App.3d 69, 72 [267 Cal.Rptr. 22].) When the damage is not caused by two distinct causes, but rather by a "single cause, albeit one susceptible to various characterizations," the efficient proximate cause analysis has no application. (*Chadwick* v. *Fire Ins. Exchange* (1993) 17 Cal.App.4th 1112, 1117 [21 Cal.Rptr.2d 871].) Thus, there was only one cause and no coverage where the excluded risk of a latent construction defect was caused by the covered risk of "negligent construction." (*Id.* at pp. 1116-1119.) Also, there was only one cause and no coverage when an excluded risk of a gradual leak was caused by the covered risk of a broken pipe. (*Finn* v. *Continental Ins. Co., supra,* 218 Cal.App.3d at pp. 71-73; see also *Chadwick* v. *Fire Ins. Exchange, supra,* 17 Cal.App.4th 1112, 1117 [cracking and latent defects (an excluded peril), not distinct from contractor's negligence (a covered peril)].)

As CUI correctly points out, "[u]nder the single causation analysis, it is irrelevant what caused the FIRE. The crucial and undisputed fact is that the LOSS was caused by a brush fire sweeping across seven miles of brush land and destroying everything contained thereon before causing the LOSS. The facts of the LOSS are <u>exactly</u> why the POLICY specifically excluded loss caused by brush fires and it is consistent with the reasonable expectations of the parties." We also agree with CUI that the facts of this case are directly on point with *Finn* v. *Continental Ins. Co., supra,* 218 Cal.App.3d 69 in that, "just as a leak cannot occur without a break in a pipes [*sic*], a brush fire cannot occur without a source of ignition." There are certain elements required to create a fire—oxygen, combustible material and a source of ignition. By labeling this fire as an "arson fire" the Piepers have artificially divided these essential elements into separate perils, which thereby flies in the face of common sense and the mutual intention of the parties.

We find that the cause of the Piepers' loss, damage to their fine arts collection, was due to one cause, the brush fire. The cause of the brush fire

under the circumstances in which it was ignited seven miles from the Piepers' residence is irrelevant to the issue of coverage. The efficient proximate cause doctrine does not apply.

"If every possible characterization of an action or event were counted an additional peril, the exclusions in all-risk insurance contracts would be largely meaningless." (17 Cal.App.4th at p. 1118.)

### 5. *The enforceability of the exclusion.*

The Piepers contend that the brush fire exclusion attempts to draft around the efficient proximate cause doctrine and in doing so violates Insurance Code section 530 and public policy and therefore is unenforceable. (See *Howell* v. *State Farm Fire & Casualty Co.* (1990) 218 Cal.App.3d 1446, 1456 [267 Cal.Rptr. 708].) Inasmuch as there are not multiple causations in the instant case the doctrine does not apply. There is no violation of the Insurance Code or public policy.

The Piepers also contend the brush fire exclusion illegally shifts the burden of proof to the insureds. This contention is meritorious. In an all risks policy the insurer has the burden to prove the loss was proximately caused by a specifically excluded peril. (*Strubble* v. *United Services Auto. Assn.* (1973) 35 Cal.App.3d 498, 504 [110 Cal.Rptr. 828].) CUI has met its burden, and this severable portion of the policy does not invalidate the exclusion.

### 6. *Conclusion.*

The brush fire exclusion is not ambiguous but enforceable as drafted. There are no triable issues of material facts and summary judgment was proper.

### DISPOSITION

Judgment affirmed. Costs are awarded to respondent.

Klein, P. J., and Croskey, J., concurred.

A petition for a rehearing was denied January 5, 1998, and appellants' petition for review by the Supreme Court was denied February 18, 1998. Mosk, J., was of the opinion that the petition should be granted.